FARRELL & CO. *v.* UNITED STATES (No. 2350).[1]

FISH MEAL—MANURE.

Fish meal, the residue, after removing the oil, of refuse parts of fish from fish canneries, shown to be fit and "used only for manure," is entitled to classification accordingly under free-list paragraph 499, tariff act of 1913, rather than as a nonenumerated manufactured article under paragraph 385, notwithstanding that other lots of the same merchandise may be fit and used for other purposes.—Thurlow Co. (Inc.) *v.* United States (12 Ct. Cust. Appls. 275; T. D. 40271), decided concurrently herewith.

United States Court of Customs Appeals, June 9, 1924.

APPEAL from Board of United States General Appraisers, Abstract 46467.

[Reversed.]

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellants.
*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Pelham St. George Bissell,* special attorneys, of counsel), for the United States.

---

[1] T. D. 40272.

[Oral argument May 9, 1924, by Mr. Charles D. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BLAND, Judge, delivered the opinion of the court:

The appellant imported from Canada two lots of a substance known as "fish meal," which is produced from the refuse parts of fish from fish canneries. The evidence shows that the refuse is tanked and cooked, and then the oil is extracted and the residue is thoroughly dried and ground into a fine meal. In the busy canning season ofttimes the refuse is permitted to accumulate until it decomposes. The meal made from the decomposed material is suitable only for manure, if the decomposition is sufficient to make it unfit for animal food. If there has not been too much decomposition, the meal may be used for poultry and animal food. In the instant importation a total of 4,485 sacks of meal was entered in two separate lots, one consisting of 456 sacks, the other consisting of 3,029 sacks. It was all classified for duty under paragraph 385 of the tariff act of 1913 as a nonenumerated manufactured article, and a duty of 15 per cent ad valorem was levied.

At the hearing no claim was made by the importer that the lot of 3,029 sacks had been improperly assessed, although protest had been filed against the collector's assessment of the entire shipment, claiming that it should have been classified under paragraph 499, which reads as follows:

499. Guano, manures, and all substances used only for manure, including basic slag, ground or unground, and calcium cyanamid or lime nitrogen.

The evidence we think discloses sufficiently that the 456 sacks could have been used for no other purpose than manure. The decision of the board seems to rest on the theory that the fish meal, regardless of its condition or use, belongs to a general class of manufactured articles which class has a use other than for manure, and that even though all of the importation was used only for manure, it could not be classified under paragraph 499 since other portions of the same class of material might be used for stock feed.

In Thurlow Co. (Inc.) *v.* United States (12 Ct. Cust. Appls. 275; T. D. 40271), decided concurrently herewith, the cases cited and the law applicable are discussed somewhat at length, and the decision and reasoning in that case are followed here.

If the decision of the board had rested upon the proposition that the testimony did not satisfactorily show that the substance was used only for manure, we would be loath to disturb their decision, but an examination of the record will disclose that this question was not seriously controverted in so far as the 456 sacks were concerned. It is true the Government contended in its brief in this

court that a chemical analysis was necessary to determine whether or not it would be harmful to animals if used as food. The testimony clearly discloses that in advance of shipment from Canada, it was stated that this lot of material would be bad, and that it was going to be made from decayed fish; that its appearance was bad; that it carried a very strong odor, and that the odor was too heavy to warrant a conclusion that it could be used for feeding poultry; that it was perfectly apparent that it was rancid. The Government by chemical test and supporting proof might have shown that it could have been used for food or that parts of the 456 sacks could have been used for food. In that instance the importer would have failed to have brought his importation within paragraph 499 which provides for *substances used only for manure.*

The judgment of the Board of General Appraisers is *reversed.*