UNITED STATES *v.* WAKEM & McLAUGHLIN (INC.) (No. 2493)[1]

CONSTRUCTION, PARAGRAPH 1583, TARIFF ACT OF 1922—"SUBSTANCES USED CHIEFLY FOR FERTILIZER"—TANKAGE.

In the provision of free-list paragraph 1583, Tariff Act of 1922, for "substances used chiefly for fertilizer," the word "used" refers to the use of the particular importation, and not to the class to which it belongs.—*Darling & Co.* v. *United States,* 12 Ct. Cust. Appls. 86, T. D. 40023, and *Thurlow Co.* v. *United States,* 12 Ct. Cust. Appls. 275, T. D. 40271. The fact that a packing-house waste known as tankage is chiefly used for manure does not serve to classify a particular importation of it under the paragraph. An importation of such, used chiefly for manure but also for feed, is classifiable under the paragraph; but one used chiefly for feed but also for manure is not. The provision includes substances to be used in the manufacture of manure.

United States Court of Customs Appeals, April 20, 1925

APPEAL from Board of United States General Appraisers, G. A. 8869 (T. D. 40433)

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General, (*John A. Kemp,* special attorney, of counsel), for the United States.
*J. Arthur Miller* for appellee.

[Oral argument March 30, 1925, by Mr. Kemp and Mr. Miller]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The importation was tankage from slaughterhouses of Canada and was assessed by the collector at 20 per centum ad valorem under paragraph 1459 of the act of 1922 as a nonenumerated manufactured article. The importer protested the classification, claiming it to be free of duty as a substance used chiefly for fertilizer under paragraph 1583 of the same law or under paragraph 1591, 1592, 1655, 1524, or 1526, or, if dutiable, at 10 per centum ad valorem under paragraph 1457 as waste.

The Board of General Appraisers, by its majority decision, sustained the protest which applied to entries under the act of 1922, holding them free of duty under the fertilizer paragraph and overruled protest 980906, which merchandise was entered under the act of 1913.

The tankage was invoiced as unground tankage, blood fertilizer, stick tankage, and dry fertilizer.

The testimony is in general agreement to the effect that the importation was the residue, or waste, from the slaughterhouses; that such animal parts as are unfit for human consumption, including hoofs, tendons, integuments, bladders, bones, and scraps from the killing floor, and all inedible materials of this kind are gathered

---

[1] T. D. 40867.

together indiscriminately and thrown into a tank; that this material is cooked by live steam in closed tanks to obtain the grease; that, after cooking, the fat or grease is floated off, the excess liquor is drained off, and that which remains in the tank is dried by the application of heat.

The record discloses that some tankage is made in open tanks by a rendering process without the use of live steam coming in contact with the contents of the tank. It seems to be conceded that the importation here is identical with the importation involved in *Darling & Co.* v. *United States,* 12 Ct. Cust. Appls. 86, T. D. 40023; and we think it is identical with the tankage involved in *Thurlow Co.* v. *United States,* 12 Ct. Cust. Appls. 275, T. D. 40271.

This is the first case involving the construction of paragraph 1583 of the tariff act, 1922, before this court. The Darling case, supra, and the Thurlow case, supra, involved the fertilizer paragraph of the act of 1913, paragraph 499, which is as follows:

499.. Guano, manures, and all substances used *only* for *manure,* including basic slag, ground or unground, and calcium cyanamid or lime nitrogen. (Italics ours.)

The corresponding paragraph of the tariff act, 1922, is as follows:

1583. Guano, basic slag, ground or unground, manures, and all other substances used *chiefly* for *fertilizer,* not specially provided for: * * *. (Italics ours.)

It will be noted that the chief change as affects the question involved here is in the use of the words "chiefly" and "fertilizer" in the act of 1922 in substitution for the words "only" and "manure" in the act of 1913.

It seems clear that Congress in its desire to encourage agriculture sought to liberalize the fertilizer provision by making free of duty substances chiefly used for fertilizer, and thereby avoid the denial of free entry of such goods under proof showing minor uses of same.

The question before the Board of General Appraisers should have been: Does the weight of the evidence show that *the importation under consideration* was chiefly used for fertilizer? It is surprising to note that the ruling opinion seems to have decided the case upon the theory that the importation was tankage and that tankage, generally, under the proof was chiefly used for fertilizer. We tried to point out in the Thurlow case, *supra,* and in *Farrell & Co.* v. *United States,* 12 Ct. Cust. Appls. 278, T. D. 40272, that the board had erred in adopting this same view, and we there laid down the rule that the test should be applied to the importation involved in the case and not applied to a class, generally, to which the importation belonged.

In the Thurlow case, supra, the testimony clearly disclosed that the importation, tankage, was used only for manure; but the Board

of General Appraisers, taking the view that it belonged to a class which was not exclusively used for manure, refused its classification under paragraph 499. This court held there that since the proof showed the importation was used only for manure it should have been classified under paragraph 499, and that the board was in error in taking the position that since it belonged to a general class of manufactured articles a part of which had another use, it should not be entitled to free entry. The same, in substance, was the holding in the Farrell & Co. case, supra.

The board, in its opinion in the case at bar, has not referred to either of the above cited cases, nor are they cited in the briefs of appellant or appellee.

It is urged by the importer in the case at bar and the majority opinion of the board seems to sustain its view, that tankage (in general) being chiefly used for manure, should fall within the free list paragraph. In other words, that the paragraph should be construed as if the word "tankage" was in a separate paragraph in the free list.

After many attempts in various previous acts to speak definitely on this subject, Congress declined to so legislate, and we think that it is clear it refused to so legislate for the reason as shown in numerous cases before this court and the Board of General Appraisers that certain kinds of tankage are not used for fertilizer and that its chief use, if not its sole use, is for feed for hogs and chickens, and that Congress did not desire to put hog feed and chicken feed on the free list. We think they did mean to say that, if an importation chiefly used for fertilizer and also used for feed should come into this country, it should be entitled to classification under the free-list provision.

The importer contends that the importation involved in this case, *in the condition imported*, is not used for feed, and that, because of that fact, it should be classified as substances used chiefly for fertilizer. We are therefore called upon to determine in this case whether Congress, in paragraph 1583, meant used chiefly for fertilizer in its imported condition or whether it meant that the commodity should go chiefly into fertilizer after importation.

The record discloses that the commodity under consideration contained various materials consisting of bones, hoofs, etc., which were indigestible. A witness, while not referring to this particular importation but while speaking of tankage, said that it contained from 1 or 2 per centum to 6 or 7 or 10 per centum of fiber. Certain witnesses testified that this kind of tankage, in its imported condition, was never used for feed. Others testified that it was used for feed in its imported condition. One witness, while showing great interest and prejudice in favor of the importers, claimed he had seen in Louisiana and Florida tankage similar to importation put upon the

soil in its imported condition, bones, hoofs, and all. His answers on cross-examination were not very satisfactory and his testimony on this particular experience is not impressive.

The great weight of the evidence discloses that most tankage like the importation involved in this case, after importation, is piled in a pile and the fibrous matters are forked out, and that they are ground and go into the making of fertilizer. The nonfibrous portions are ground, treated, mixed, and are used both for fertilizer and feed.

If we were to apply the test to the merchandise *as imported*, we do not think the record would disclose that the importation, or importations of similar character, were chiefly used for fertilizer. The evidence may show that the importation chiefly goes into the manufacture of fertilizer, or, after being sorted and treated, is used for fertilizer. While there is convincing evidence in the record to indicate that the importation, or identical importations, were used chiefly for feed, we are not inclined to disturb the majority findings of the board upon this point, since it had the opportunity of considering the evidence first hand and may have been justified, by the weight of the evidence, in holding that the importation, or similar importations, were used chiefly for fertilizer.

It is urged by the importer that, if the importation is not tested as to its use in the condition as imported, it will necessitate the administration officials' following the importation into commerce.

Classifying merchandise for customs duties in accordance with the use to which it is put after importation is not new in customs law, and the rules are fairly well settled. Chemical analysis and definite characteristics may not be controlling in determining the use to which a commodity may be put, but they at least are important in many cases in determining the use. The use made of similar commodities is certainly proper evidence. The use to which other articles differing in characteristics, chemical analyses and use, though they may belong to the same general class as the importation, certainly should not be controlling.

In the case at bar, it is urged by the importer, and repeated in the ruling opinion of the Board of General Appraisers, that more than 75 per centum of tankage generally is used for fertilizer. This includes tankage that is used for feed, no doubt, exclusively. Since it is manifest that there are classes of tankage which are used exclusively for feed, it would seem apparent that it would not be carrying out the wishes of Congress to admit them free of duty, because they happen to be called tankage.

If the weight of evidence in this case discloses that the chief part of the importation, which is waste, went into the manufacture of fertilizer, we think it should have the free list classification regardless

of any showing that the merchandise *as imported* was not so used.— *Shallus* v. *United States*, 129 Fed. 845; *Magone* v. *Heller*, 150 U. S. 70.

In the Shallus case, supra, where packing-house waste was under consideration under paragraph 569 of the act of July 24, 1897, for "substances used only for manure," the court said:

The Government, however, contends that the language of paragraph 569, properly construed, does not include substances which by themselves can not be used for manures, but is limited to those substances which can, in the state in which they are imported, be used only as manure. With this contention I do not concur. I am of opinion that the framers of the law, in providing as they did in section 569 that the articles included under that section should be admitted free of duty, wished to encourage agriculture, or at all events were desirous that no unnecessary burden should be placed upon it. It would therefore seem that the section should be so construed as to give effect to its obvious purpose. Where, as in this case, the testimony conclusively establishes that the article brought into the country has no other use or value except that of forming, together with other things, a manure, it seems to me to be within both the spirit and letter of paragraph 569.

The Supreme Court, in *Magone* v. *Heller*, 150 U. S. 70, while stating that the test was to be determined at the time of importation, uses the following language:

The result of these considerations is that, in this act, the phrase "expressly used for manure" is equivalent to "used expressly," or "particularly," or "especially" for manure; and denotes those substances, the only common use of which, either by themselves, or in combination with other materials, is for the purpose of fertilizing the soil.

If the only common use of a substance is to be made into manure, or to be itself spread upon the land as manure, the fact that occasionally, or by way of experiment, it is used for a different purpose, will not take it out of the exemption. But if it is commonly, practically, and profitably used for a different purpose, it can not be considered as "expressly used for manure," even if in the majority of instances it is so used. To hold otherwise would be to extend to other industries an exemption intended for the benefit of agriculture only.

In *Darling & Co.* v. *United States*, 12 Ct. Cust. Appls. 86 T. D. 40023, in the opinion by Judge Barber, after stating that the merchandise after importation was "screened out with large screens, the part that went through the screen being used for making hog feed and the remainder for the manufacture of fertilizer," said:

The basis of importer's contention that it is entitled to free entry under paragraph 499 is that its witness testified without contradiction that as imported it was fit only for use as a fertilizer, that is, as manure, and that if it was used in the condition as imported it was so used.

We agree with the conclusion of the Board of General Appraisers that such facts do not bring it within the provisions of 499. The fact that certainly a substantial part of the merchandise is used in the manufacture of hog feed negatives the conclusion that it is used only for manure.

While disagreeing with the majority opinion of the Board of General Appraisers, now, as we did in previous cases cited, in the manner above indicated, we will not disturb its findings, from the very

much involved and unsatisfactory evidence, that the importation was chiefly used for fertilizer, and therefore affirm its judgment. *Affirmed.*