## UNITED STATES *v.* TRIBUNO (No. 2488)[1]

1. CONSTRUCTION, PARAGRAPH 806, TARIFF ACT OF 1922—GRAPE PRODUCTS CAPABLE OF PRODUCING ALCOHOL.

   That part of paragraph 806, Tariff Act of 1922, which levies additional duty of $5 per proof gallon on the potential alcohol content of grape products from which alcohol may be produced does not contemplate only such as will produce alcohol without manipulation.

2. RELATIVE SPECIFICITY—"GRAPE SIRUP," PARAGRAPH 806, AND "SACCHARIDES," PARAGRAPH 504, TARIFF ACT OF 1922.

   The provision of paragraph 806, Tariff Act of 1922, for "grape juice, grape sirup, and other similar products of the grape" is more specific than that of paragraph 504 for "saccharides."

3. GRAPE SIRUP CAPABLE OF PRODUCING ALCOHOL.

   Concentrated grape juice, known as grape sirup, capable of producing alcohol by the addition of yeast and water, is subject to the additional duty provided for by paragraph 806, Tariff Act of 1922. of $5 per proof gallon on its potential alcohol content, and is not classifiable as a saccharide under paragraph 504.

4. EVIDENCE—RELEVANCY.

   Evidence that grape sirup is used as food and for preserving fruits has no bearing upon the question of its subjection to the additional duty of $5 per proof gallon levied by paragraph 806, Tariff Act of 1922, upon the potential alcohol content or uch, if "capable of producing more than 1 per centum of alcohol."

### United States Court of Customs Appeals, May 11, 1925

APPEAL from Board of United States General Appraisers, G. A. 8855 (T. D. 40401)

[Reversed.]

*William W. Hoppin,* Assistant Attorney General (*Ralph Folks,* special attorney, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument March 24, 1925, by Mr. Hoppin and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The importation was invoiced as "17 casks of grape syrup," "grape syrup nonalcoholic, capable to produce more than 1% of alcohol—product of Italy."

---

[1] T. D. 40942.

The appraiser reported that the merchandise "consists of grape juice concentrated capable of producing 46½% of alcohol." Duty was assessed upon the commodity at 70 cents per gallon, and in addition thereto $5 per proof gallon of alcohol on the assumption that 46½ per centum of alcohol could be produced therefrom. The importer, in his protest, claims that duty should have been assessed at 70 cents per gallon as grape sirup containing or capable of producing less than 1 per centum of alcohol, under paragraph 806 of the Tariff Act of 1922. It is also claimed by the importer, in his amended protest, that it should have been assessed at 50 per centum ad valorem under paragraph 504 as a saccharide.

It is admitted that the importation is a grape sugar or grape sirup, that it is bought and sold as such, and that it is a highly concentrated product of the grape.

The sample before us, which is conceded to be taken from the importation and is representative of the entire importation, is a thick, brown substance, with a considerable quantity of damp, brownish sugar at the bottom, and a small quantity of dark sirup of deeper brown on the top. A small quantity on the top flows freely, but the portion on the bottom is solidified to the extent that it does not flow freely.

The truthfulness and accuracy of the testimony of the Government chemist that the substance produced 46.5 per centum absolute alcohol by volume, when mixed, one part sirup and three parts water, and a little yeast, and permitted to remain for five days, is not disputed.

The Board of General Appraisers sustained the first contention in the protest of the importer and directed the assessment of the merchandise at 70 cents per gallon only, under paragraph 806, upon the theory that, in its imported condition, it did not contain or was not capable of producing (without manipulation), 1 per centum or more of alcohol.

Paragraph 806 is as follows:

PAR. 806. Cherry juice, prune juice, or prune wine, and all other fruit juices and fruit sirups, not specially provided for, containing less than one-half of 1 per centum of alcohol, 70 cents per gallon; containing one-half of 1 per centum or more of alcohol, 70 cents per gallon and in addition thereto $5 per proof gallon on the alcohol contained therein; grape juice, grape sirup, and other similar products of the grape, by whatever name known, containing or capable of producing less than 1 per centum of alcohol, 70 cents per gallon; containing or capable of producing more than 1 per centum of alcohol, 70 cents per gallon, and in addition thereto $5 per proof gallon on the alcohol contained therein or that can be produced therefrom.

Paragraph 504 reads:

PAR. 504. Adonite, arabinose, dulcite, galactose, inosite, inulin, levulose, mannite, d-talose, d-tagatose, ribose, melibiose, dextrose testing above 99.7 per centum, mannose, melezitose, raffinose, rhamnose, salicin, sorbite, xylose, and other *saccharides*, 50 per centum ad valorem. (Italics ours.)

It will be noted that "cherry juice, prune juice or prune wine, and all other fruit juices and fruit sirups, not specially provided for, containing less than one-half of 1 per centum of alcohol," are assessed at 70 cents per gallon, and the same commodities containing one-half of 1 per centum or more of alcohol are assessed at 70 cents per gallon and in addition thereto $5 per proof gallon on the *alcohol contained therein.* Up to this point in the paragraph there is no provision for a commodity which is *capable of producing, etc.*. The latter part of the paragraph deals separately with grape juice, grape sirup, and other similar products of the grape, by whatever name known, and then levies a duty of 70 cents per gallon if it contains or is *capable of producing* less than 1 per centum of alcohol. If it is capable of producing more than 1 per centum of alcohol, a duty of 70 cents per gallon and an additional duty of $5 per proof gallon is levied on the alcohol contained therein or *that can be produced therefrom.*

It is evident that Congress has singled out grape juice, grape sirup, and similar products of the grape for a special tax of $5 per proof gallon on the alcoholic content if from the same 1 per centum or more of alcohol can be produced. The two phrases *"capable of producing"* and *"that can be produced therefrom"* must be construed together.

It is the contention of the importer that to warrant the additional $5 per proof gallon the commodity must be of such a nature that without any manipulation or without the addition of any other material it will itself produce more than 1 per centum of alcohol. The board agreed with this contention. We think the intention of Congress was otherwise.

It seems to be admitted that the importation is so highly concentrated into a sugar that if left in its imported condition it would remain in that condition for an indefinite period without the development of alcohol. This is likewise true of any highly concentrated sugar product. Concentration takes the water out, and fermentation is thereby avoided. We think Congress must have intended, by its singling out of grape products for this high special duty, the discouragement of the importation of grape products which by easy manipulation could be turned into alcohol, which commodity was the subject of so much restrictive legislation by Congress. If this product is not a fair sample of what Congress had in mind when it enacted the latter portion of this paragraph, it would be difficult to say what kind of products it was considering. Congress used the phrases "containing or capable of producing" and "that can be produced therefrom." It is clear that the importation does not contain alcohol, but that 46.5 per centum of alcohol *can be produced therefrom* seems to be too clear for serious contention.

It is contended, and there is considerable testimony in the record to that effect, that the merchandise in question is used as a sugar

for preserving fruits, and that by some it is used as a food. It is also contended by the importer that the grape flavor is not preserved in the concentration. The Government disputes this contention and asserts that the tasting of the importation absolutely refutes the latter contention. The product is so highly concentrated that it is difficult to determine just what flavor it has, and this court has not tasted it while in any other condition.

Nothing is shown in the record to indicate why it would not retain its flavor. Nothing is shown in the record that would justify belief in the claim that this highly concentrated and evidently expensively produced article is commercially practicable for preserving fruits or to eat as an ordinary food. In our view of the case the use to which, in this instance, it happens to be applied is not controlling, since the statute says "*capable of producing.*"

While some of the witnesses have stated that they never knew it to be used for making wine, there is nothing to show that it would not make wine. Its composition and nature, it seems to us, would justify the conclusion that it would make wine. It is not surprising that the witnesses knew nothing of its going into commercial wine. The commercial practice in this line, in this country, at this time, is not indulged in in such an open and public way that the average witness would be justified in testifying conclusively as to the commercial practices concerning the same. That the importation is grape sirup or grape sugar is admitted. That more than one-half per centum of alcohol can be produced therefrom is not denied. The statute does not require that the commodity shall produce, by itself, certain quantities of alcohol, but it says "that can be produced therefrom," and it is clear to us that the collector's assessment of $5 per proof gallon was correct.

Replying to the illusive argument that it must, in its imported condition, be capable of producing, etc., it is only necessary to note that the statute says, "that can be produced therefrom," which implies that after importation something may be done to it to cause it to produce, etc. In this connection, and in reference to the condition in which imported, it is important to call attention to the case of *United States* v. *Wakem & McLaughlin,* 13 Ct. Cust. Appls. 37, T. D. 40867, recently decided by this court.

It may be urged that sugar, corn meal, molasses and many other articles of commerce are capable of producing 1 per centum or more of alcohol, and that if Congress had meant to include this commodity, it would also have included in the same provision the other kinds of importations from which alcohol could be produced. The distinction is clear. Congress made this provision apply only to the products of the grape, no doubt recognizing the possibility and probability that just such grape products as this, which will produce large quantities

of alcohol, would be imported into this country and that from such grape products grape wine would be made. The raising of grapes has always been closely associated with the wine industry. The American people have been in the habit of importing and using large quantities of alcoholic beverages made from the grape. We believe Congress had this product in mind when it legislated so definitely and specifically as it did in the latter part of paragraph 806.

The Board of General Appraisers, in its opinion, said:

We do not think paragraph 504 is applicable to this case, first, because the commodity as imported is not in our judgment accurately described in said paragraph, and second, in our view it is more specifically provided for in paragraph 806 as coming within the expression "grape sirup, and other similar products of the grape, by whatever name known. * * *"

With this conclusion we agree.

The judgment of the Board of General Appraisers is *reversed.*