United States *v.* McBlaine & Co. et. al. (No. 2982)[1]

United States Court of Customs Appeals, January 23, 1928

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higgenbotham,* special attorney, of counsel), for the United States.
*Walden & Webster* (*Walter F. Welch* of counsel) for appellees.

[Oral argument December 6, 1927, by Mr. Higginbotham and Mr. Welch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal involves 11 protests covering 33 entries of cotton rags which were classified by the collector under paragraph 1457 of the Tariff Act of 1922, as waste, at 10 per centum ad valorem. The United States Customs Court sustained the protests, holding that the goods were free of duty under paragraph 1601, as old junk, or under paragraph 1651, as rags used chiefly for paper making. The protests of the importers claimed them free of duty as rags chiefly used for paper making, under paragraph 1651, free of duty as junk, old, under paragraph 1601, or free as cotton or cotton waste under paragraph 1560, or, if dutiable, as cotton waste advanced, at 5 per centum ad valorem under paragraph 901, or at the appropriate rate according to component material of chief value, or at 10 or 20 per centum under paragraph 1459, as a nonenumerated article.

From the testimony it appears that some of the rags were colored and some were white. They were bought for washed rags, but the colored ones may not have been washed. There was only one exhibit introduced in the case, and it is before us. The rags of the

---

[1] T. D. 42566.

exhibit are washed and probably sterilized. The buttons have been removed, and the legs and sleeves have been opened. Four of the rags in the exhibit are 2 or 3 feet square and one of them about 15 inches by 12 inches. The samples and the proof show that these particular exhibits are wipers ready for use in the condition imported, but the testimony shows the importations, which consisted of several invoices, contained rags, 10 per centum of which contained buttons, buckles, etc., and rags which were tender and too small for wiping. The evidence, we think, shows that 90 per centum of the rags were suitable for wipers, but that the importation would have to be sorted before it could be sold as "Simon pure wiping rags."

It can not be successfully argued that this kind of merchandise is junk, since special manufacturing efforts have been bestowed upon it which have taken it out of the junk class, and the merchandise is not shown to be of the same character as that which was held to be junk by this court in *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, 49 Treas. Dec. 1019, T. D. 41644.

The Government argues that since 90 per centum of the importation are wipers, importers should be required to pay the highest applicable rate of duty under the commingling paragraph of the statute. Certainly if a dutiable waste is commingled with 10 per centum of nondutiable material in such a way that the quantity or value of each class could not be readily ascertained by the customs officers, the importers, under that statement of fact alone, should be required to pay on the whole the duty applicable to the 90 per centum of dutiable waste.

Unfortunately for the position of the Government this record, we think, shows that this class of rag waste is chiefly used for paper making.

John McBlaine, head of importing firm, McBlaine & Co., in part, testified as follows:

Q. Is it also part of your business to keep track of the market and the demand for goods of this kind?—A. Most assuredly.

Q. Has that been true during all the time you have been in this business?—A. Well, I have only been a partner in the firm since 1913; since then I have kept track of the market constantly.

Q. Will you state, please, based upon your experience, what is the chief use of merchandise like this here in question?—A. The chief use for all rags is for paper making.

Justice SULLIVAN. About this stuff?

The WITNESS. This stuff, paper making.

It may be pointed out that this witness did not sell to paper makers or to others who put the rags to their ultimate use; that he sold to rag dealers, who, in turn, sold or distributed them, but nowhere in his testimony does it appear that he was not qualified to testify on this subject, or that he did not have full knowledge of the subject

matter. His statement that "this stuff" (evidently meaning this class of stuff) was chiefly used for paper making, stands uncontradicted. If the record had showed that "this stuff" was chiefly used for wiping machinery in its imported condition, even though intermingled with rags which were not so used, then the Government would be in a different position.

The Government examiner, Mr. Walker Q. Wenrich, did testify as follows:

Q. That covers a line of goods imported from Japan?—A. Yes, sir.

Q. Would you say that all of these shipments that come from Japan would be of this same character of rag?—A. Yes, sir.

Q. Have you had any experience as to the use of rags of that character?—A. I know that they are sold by the trade as wiping rags. I have not seen them used.

Q. You have not seen them used?—A. No, sir.

Q. Have you had any experience in paper-makers' rags?—A. Yes; I examined all those rags.

Q. Did you ever examine any rags that you knew were going to paper mills?—A. Yes, sir.

Q. Were they of the same character of rag as these covered by these shipments, or different.—A. No.

Q. How do they differ?—A. The European rags are not manipulated at all; they come in not sorted or graded or anything, and they are sold to paper mills—to people that do not do anything else but make paper.

Q. Are they washed before they come in?—A. Not that kind of rag.

Q. The ones that go to paper mills?—A. No.

Q. How about the size of the rags?—A. They are not graded at all; any size.

Q. In going over these bales did you come to any conclusion about these being graded?—A. Yes, sir.

Q. What was your conclusion?—A. Well, they are manipulated—they are sent—they are manipulated in a sense before they are brought here; they are all one kind of rag, either underwear or muslin or cheesecloth or colored wipers; they are all graded along that line; you never find two kinds of rags in the one shipment under the same mark.

If the trial court found that the merchandise was chiefly used for paper making, and we are constrained to believe that this is the proper interpretation of its finding, we can not say that the weight of the testimony is to the contrary. There is some showing to the effect that the price of wipers would prevent them from being used as paper stock, and, since 90 per centum of the importation consists of wipers, it does seem improbable that this class of merchandise is chiefly used for making paper. But this is a fact which we think is susceptible of proof, and the Government had full opportunity to rebut the evidence given by the importers. Under the state of the record, we can do nothing but affirm the decision of the court below. This case is, therefore, distinguishable from *Pacific Iron & Metal Co. et al.* v. *United States*, 15 Ct. Cust. Appls. —, T. D. ——, Suit No. 2937.

386

We are not impressed with the argument that, since the chief use of all rags is for paper making, this fact requires the free classification of a class of rags which consists chiefly of wipers. A parallel to this question may be found in recent litigation in this court concerning packing-house products used for fertilizer. See *United States* v. *Wakem & McLaughlin (Inc.)*, 13 Ct. Cust. Appls. 37, 46 Treas. Dec. 272, T. D. 40433; *Katzenstein & Keene (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 143, 50 Treas. Dec. 39, T. D. 41674.

In the decision of the court below, Adamson, Justice, speaking for the court said:

While the testimony, long and confusing, is somewhat contradictory as to some of the entries, we think the Government is bound by the report of the appraiser, and inasmuch as the merchandise was advisorily classified as not fit in the condition in which imported for wipers but could only be made fit for that purpose after cleaning and manipulating, the merchandise falls within the class and description of rags that have been frequently held by this court and the Court of Customs Appeals as old junk, or merchandise dutiable under other provisions as used chiefly for paper making.

The appraiser's answer to the protest was as follows:

The merchandise, subject of protest, consists of rags in a condition as imported of a size and texture suitable for use, after cleaning and manipulation, as cloths for cleaning and polishing.

Under the instructions issued by the department in T. D. 39959, such rags are to be returned as dutiable at 10% ad valorem under paragraph 1457, act of 1922, and were so returned.

We can not agree with the learned justice, that the Government is bound in all respects by the report of the appraiser, and that his advisory classification prevents proof of the actual condition of the goods when imported. *United States* v. *Rockhill & Vietor et al.*, 10 Ct. Cust. Appls. 112, 36 Treas. Dec. 456, T. D. 38031.

The court below, having given the merchandise a free classification under the provision for rags chiefly used for paper making and the evidence not being to the contrary, we must affirm its judgment.

*Affirmed.*