BANGOR & AROOSTOOK RAILROAD CO. ET AL. *v.* UNITED STATES
(No. 3502)[1]

---

[1] T. D. 45724.

United States Court of Customs and Patent Appeals, May 23, 1932

*Nathan W. Thompson* and *Richard S. Chapman* for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument April 12, 1932, by Ralph Folks; submitted on briefs by appellants]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise, which, according to the report of the collector, consisted of ground tankage, was assessed for duty by him at 20 per centum ad valorem under paragraph 1459 of the Tariff Act of 1922, which reads as follows:

PAR. 1459. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The importers protested—protest 342297–G—claiming that the merchandise was free of duty as substances used chiefly for fertilizer under paragraph 1583 of that act, which reads—

PAR. 1583. Guano, basic slag, ground or unground, manures, and all other substances used chiefly for fertilizer, not specially provided for: *Provided*, that no article specified by name in Title I shall be free of duty under this paragraph.

According to the witness Silas J. Smith, manager of the Canadian Fertilizer Co. of Chatham, Ontario, Canada, the imported merchandise is a "fertilizer base"—"a material with which other fertilizer materials are mixed to make a complete fertilizer," and was made rom tankage and—

refuse from the Dominion Sugar Co., Chatham, Ontario, the product known as "mother liquor." This tankage is used as an absorbent for the "mother liquor,"

and the combination is put through a long rotary drier to remove the moisture. When going through the drier, to prevent caking or burning, we add about 200 pounds sulphate ammonia to each ton of dry material. The product from the drier will test 9 to 10 per centum of ammonia, 45 per centum of ammonium phosphate.

It further appears from the record that the imported tankage was used as a base in the manufacture of fertilizer; that it was mixed with other—

tankage and with sulphate of ammonia, consisting of soda, acid phosphate and muriate of potash, to give it the test of fertilizer, of the fertilizer used in that section [the section referred to covered Aroostook County, Me., only],

and that it could not be used in its imported condition as "stock feed," because of the great quantity of potash it contained—6 per centum.

The witness Albert B. Werby, who testified for the importers, was the only witness interrogated as to the chief use of the involved merchandise. He stated that he did not know how much of it was consumed in the United States each year. He then said—

X Q. Taking the amount consumed for various purposes, approximately the relative percentage of tons or pounds that which is used for fertilizer and that for feeding?—A. No; I shouldn't care to go into statistics as to the *amount bought for fertilizer and for feeding.* (Italics ours.)

It further appears from the record that protest 342296–G, involving entry 90121, was abandoned by the importers.

In its decision overruling the protest the court below, among other things, said—

* * * Subsequently, when protests 342294–G and 350596–G were called for trial, counsel agreed that the merchandise was similar to that involved in the prior hearing, and that the records in the four cases be combined. Protest 342296–G was abandoned in open court, and it is accordingly overruled.

The official papers show that the merchandise consists of ground and unground tankage; that the collector assessed duty on the ground tankage at 20 per centum ad valorem, and on the unground at 10 per centum ad valorem, under paragraph 1459 of the Tariff Act of 1922, as nonenumerated, partly manufactured, and unmanufactured articles, respectively. * * *

Thereupon, the court held, on the authority of the decision of this court in the case of *United States* v. *Swift & Co.*, 14 Ct. Cust. Appls. 222, T. D. 41706, that the "unground tankage covered by protest 350596–G" was dutiable as waste at 10 per centum ad valorem under paragraph 1457. However, as no claim was made in the protest that the merchandise was dutiable under that paragraph, the court affirmed the decision of the collector holding that the unground tankage was dutiable at 10 per centum ad valorem under paragraph 1459. The court further stated that the merchandise involved in protest 342294–G did not consist of unground tankage.

Appellants have limited their appeal to protests 342296–G and 342297–G, and, although it is claimed in the assignment of errors that

the merchandise consists of "ground and unground tankage," the collector reported that it consisted of ground tankage, and no evidence was offered by importers to refute that statement.

Although appellants have attempted to include protest 342296–G in this appeal, we are unable to consider the dutiable status of the merchandise involved therein, due to the fact that that protest was abandoned by appellants on the trial in the court below. Accordingly, the dutiable status of the ground tankage, covered by protest 342297–G, is the only issue before us for consideration.

On the authority of the decisions of this court in the cases of *United States* v. *Swift & Co., supra,* and *Pacific Guano & Fertilizer Co.* v. *United States,* 15 Ct. Cust. Appls. 218, T. D. 42240, the court below held that it was incumbent upon the importers to establish that tankage of the grade or class here involved was chiefly used for fertilizer in the United States at, or immediately prior to, the time of the importation of the tankage in question; that the actual use of the particular importation was not determinative of the issues, and that, as the importers failed to offer any evidence as to the chief use of the grade or class of tankage to which the involved tankage belonged, the protest should be overruled. Judgment was entered accordingly.

Counsel for appellants contend that the evidence in the case establishes that the involved merchandise could not be used in its imported condition as stock feed; that this court should take judicial notice of the fact that merchandise "of the kind at bar has commercially but two uses, viz, (1) use as a fertilizer, (2) use as animal feed," and that the involved issues are controlled by the decision in the case of *United States* v. *Wakem & McLaughlin (Inc.),* 13 Ct. Cust. Appls. 37, T. D. 40867, wherein this court, in considering the dutiable status of tankage, among other things, said—

The question before the Board of General Appraisers should have been: Does the weight of the evidence show that *the importation under consideration* was chiefly used for fertilizer? It is surprising to note that the ruling opinion seems to have decided the case upon the theory that the importation was tankage and that tankage, generally, under the proof was chiefly used for fertilizer. We tried to point out in the *Thurlow* case, *supra,* and in *Farrell & Co.* v. *United States,* 12 Ct. Cust. Appls. 278, T. D. 40272, that the board had erred in adopting this same view, and we there laid down the rule that the test should be applied to the importation involved in the case and not applied to a class, generally, to which the importation belonged.

In that case, as stated in the language quoted, this court held that, in cases of this character, the issues did not involve the chief use of tankage generally. It is true that the court said that the issue before the trial court was—

Does the weight of the evidence show that *the importation under consideration* was chiefly used for fertilizer?

However, that pronouncement has been modified by the decisions of this court in *United States* v. *Swift & Co., supra; Pacific Guano & Fertilizer Co.* v. *United States, supra; Wilbur-Ellis Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 472, T. D. 44762, wherein it was held that, in cases of this character, the precise question to be determined is, What is the chief use of the grade or class of tankage to which the particular importation belongs? and not the chief use of the particular importation under consideration. Accordingly, so far as the provisions of paragraph 1583 of the Tariff Act of 1922 are concerned, the matter is no longer an open question in this court.

It appears from the record that the involved merchandise was not fit, in its imported condition, to be used as stock feed, and that it required considerable processing in order to fit it for use as fertilizer. The witnesses for the importers said that it was a fertilizer base, and, in order that it might be used commercially as fertilizer, it was necessary to mix it with other—

tankage and with sulphate of ammonia, consisting of soda, acid phosphate, and muriate of potash.

Obviously, then, the imported tankage was a mere material, manufactured or partly manufactured, which, according to the record, was used by the Aroostook Federation of Farmers as a "base" in the manufacture of fertilizer.

Some of the witnesses for the importers stated that the reason that the involved tankage was unfit, in its imported condition, to be used as "stock feed" was because it contained 6 per centum of potash, and that potash in such quantities would be injurious to animals. However, the importers' witness Wilbur stated that, if tankage containing a large percentage of potash was "diluted" so as to reduce the potash content to a fraction of 1 per centum, it would not, so far as the potash content was concerned, be injurious to animals.

We must hold, therefore, that there is nothing in this record to substantiate the claim of counsel for appellants that the involved merchandise could not be used as a "base" in the manufacture of animal feed.

In view of the fact that appellants failed to establish on the trial below that at, or immediately prior to, the importation of the involved tankage, the grade or class of tankage to which it belonged was chiefly used for fertilizer, we must hold that the court below reached the right conclusion.

The judgment is *affirmed*.