Hat, Judge,
delivered the opinion of the court:
This is a suit brought by the plaintiff, George William Mottram, a British subject, against the United States to reC0A7er a sum of something OA^er $200,000. It is alleged by *315 tlie plaintiff that at an auction sale of stores belonging to the United States held at Slough, England, on June 2o, 1919, he bought and paid for a certain lot of Garlock steam packing which was put up for sale by an agent of the United States; that the quantity of said packing so purchased by him was not delivered to him, and that although the money which he paid for said packing has been returned to him he is entitled to recover from the "United States the market value of said packing at the time the agent of the United States failed to deliver it to him.
By the act of Congress of May 10, 1918, the President was authorized “ through the head of any executive department to sell any supplies, materials, equipment or other property heretofore or hereafter purchased, acquired, or manufactured by the United States in connection with or incidental to the prosecution of the war." In the exercise of the authority so conferred upon him the President of the. United States selected the Secretary of War to sell the property described in the act; and the Secretary of War, in pursuance of the axithority vested in him, authorized the sale of certain property in England, and on April 14, 1919, Col. C. R. Pettis, Corps of Engineers, United States Army, acting under the authority of the Secretary of War, entered into a written agreement with J. G. White & Company, Limited, of London, England, whereby the said White & Company undertook under the terms of the contract to sell for the United States certain quantities of engineer stores and equipment in storage at the U. S. Engineer depots at Slough and Didcot, and other places. In pursuance of said contract White & Company advertised for sale by auction on June 24, and the following days, certain quantities of engineer stores and equipment at Slough, England.
Among these stores was a quantity of Garlock steam packing, and when the catalogue listing the property for sale was published and distributed it was set out • in said catalogue that there was for sale 278,432 pounds of Gar-lock steam packing. The plaintiff bid for this packing and the same was knocked down to him at 3i/± pence per pound. The plaintiff purchased other property at said auction sale, *316 and gave White & Company bis check for all of his purchases, included in which check was the amount due by him for the Garlock packing. This check was accepted by White & Company and collected by them.
It, however, was discovered in a few days after the sale that there was not the quantity of Garlock packing in the storehouses at Slough which had been advertised and which had been bid for by the plaintiff. It was explained to the plaintiff that a mistake had been made in making the inventory by the stenographers who transcribed the notes furnished them, and that the inventory furnished by the contracting officer to White & Company was in error as to the quantity of Garlock steam packing. The plaintiff insisted upon the delivery to him of the quantity of packing for which he had bid or the payment to him of the market value of the packing at the time of the Sale. White & Company were unable to deliver the packing, and returned to the plaintiff the money which he had paid for the packing, which he finally accepted with the understanding that his rights should in nowise be affected by the acceptance.
Before the sale on June 25, 1919, the plaintiff had visited the storehouses at Slough for the purpose of inspecting the stores which were to be sold on that day; on the occasion of one of his visits he asked about Garlock steam packing; the location of all of it in the storehouse was pointed out to him. If there had been 218,432 pounds of such packing it would have occupied a space of 15,000 cubic feet. Such a quantity of Garlock packing would have supplied the needs of Great Britain for at least twenty years. The facts show that the plaintiff before the sale knew there was not at Slough anything like the quantity of Garlock packing which was advertised for sale in the catalogue. When on June 25, 1919, the auctioneer put up the Garlock packing for sale he. was asked in the presence of the plaintiff if he guaranteed the quantity of Garlock packing which he was offering, and the auctioneer stated that he did not guarantee the quantity. With his knowledge of the probable quantity of Garlock packing and this statement of the auctioneer the plaintiff made his bid. And afterwards on June 30, 1919, when he gave to one Davies an option on ninety tons of this *317 packing the plaintiff took care to specify in the option that it was “ subject to the quantity being in stock as sold by the U. S. A.” The plaintiff having knowledge that the quantity of packing which he bid for was not in the possession of the vendor, and knowing when he bid and when he paid for the packing that it could not be delivered, he can not be heal'd in this court to assert a claim so evidently based upon a design to get something for nothing.
But apart from the aspect of the case above referred to the plaintiff has no claim against the United States. All of the plaintiff’s transactions were with White & Company. That company conducted the sale, issued the catalogue, and employed the auctioneer. The plaintiff paid his money to White & Company, received it back from White & Company, and fully recognized that White & Company were the agents of the United States. That agency was governed by the contract which the United States had with White & Company, and all persons dealing with White & Company as the agent of the United States had the duty imposed upon them to inquire as to what its power was in issuing catalogues listing the quantities of articles for gale, and how far statements contained in such catalogues would bind the United States.
This contract among other things provided: “ The contracting officer assumes no liability for claims of any character that may be made by purchasers against the contracting officei’, and the selling agents shall hold and save the contracting officer and his authorized representatives free and harmless from and against all and every claim, by purchasers and prospective purchasers, that may arise from the operations incident to this agreement.” Under this provision of the contract it is obvious that whatever claim the plaintiff may have it is not such a claim as can be successfully urged against the United States.
Moreover, it was the duty of White & Company under the contract to supply all auctioneers, accountants, cashiers, salesmen, engineers, and assistants for the preparation of catalogues, listing and describing the various classes of stores and equipments from the inventories furnished by the contracting officer; and the contract further provides: “ The de *318 scription and quantities, as stated in the inventories of the contracting officer, are subject to verification by the selling-agents, and the contracting officer assumes no liability for the accuracy of such descriptions and quantities.” The Government is, therefore, not bound by the mistakes made in the catalogue. The plaintiff was bound to take notice and to inform himself of the extent of the authority of the selling agent to bind the Government.
When White & Company by mistake listed in the cata-logue a quantity of Garlock steam packing which was not in storehouses and which could not be delivered when sold, the mistake was that of White & Company and not that of the United States and the plaintiff can not look to the United States for redress.
The petition of the plaintiff must be dismissed. It is so ordered.
Graham, Judge; Downey, Judge: Booth, Judge; and Campbell, Chief Justice, concur.