Booth, GMef Justice,
delivered the opinion:
The plaintiff purchased and paid for certain elliptical steel tanks located in building #11 at Federal Park (Perry-ville), Maryland; he was required under his contract to purchase, dismantle, and move the same within a 50-day period, without injury to the premises. As a guaranty of satisfactory performance he deposited a certified check for $1,000 in place of a bond.
■The four elliptical tanks had been constructed for the storage of ammonia nitrate; the skeleton steel structure in which they were built was designed for no other purpose than to house the said tanks. The tanks of necessity had tops, bottoms, and two sides each, were laid side by side, extended the length of the building and the two exterior *390 sides of the two outer tanks were within a few inches of the side walls of the building. At no point did the tanks come in contact with the walls of the building.
The adjoining sides of the tanks were tied together by angle irons and other forms of steel construction; all tank sides were installed in the same level as certain transverse girders extending from “ I ” beams in the walls to a row of steel columns in the center of the building, and wtere fitted into and extended from one transverse girder to the next.
The four tops and bottoms of the tanks were fastened by rivets to the tank sides throughout their length and to the transverse girders where they crossed.
The prospectus of sale invited inspection. Plaintiff made an inspection and verified the representations, and from standard tables showing the weights of different forms of steel and iron computed the total weight of the four tanks and based his bid of purchase thereon.
The structure as a unit presented a solid bit of construction. In January, 1924, the necessity for the use of the tanks had passed; the area of the building was considerable, and its use for storage purposes was desired. The removal of the tanks was therefore necessary, and their dismantling and removal were tendered for a consideration. A bid was made, accepted, and payment received from the plaintiff.
After plaintiff had begun the dismantling of the tanks it was realized by the officials at Federal Park that the structure of the proportions of the building #11, minus the anchorage of the 1,686,900 pounds of the tanks and the longitudinal brace that the installed tanks supplied, would be unsafe and that longitudinal braces would have to be •installed between the transverse girders to insure the safety that was required. Kesort was therefore had to the subterfuge of contending that the tank sides, other than the outermost sides of the two exterior tanks, namely, A, B, and C, in defendant’s Exhibit I, being necessary for the stability of the building, were therefore “ a structural element of the building.”
Later, three weeks after plaintiff had removed his equipment, it was further determined that only B was necessary *391 and that A and C were not “ a structural element of the building ” and could be removed by plaintiff.
Having made this concession the defendant’s position is that the plaintiff is without further right in the matter. In other words, having sold the plaintiff four steel tanks of specified dimensions, the construction of which was better known to defendant’s representatives than to the plaintiff, and without previous limitation as to the parts to be included in the purchase, the defendant now claims the right to subsequently exclude such part thereof as was thereafter found to be useful to the defendant in connection with building #11.
The position is untenable. The plaintiff purchased and paid for four tanks as they stood in the building — steel tanks of %-inch steel of the length, breadth, and depth of these tanks joined by angle irons, etc., which had a total weight of 1,559,900 pounds. The plaintiff was permitted to take only 627,400 pounds of the said steel, and without regard to whatever the steel material in question may be properly called or must necessarily be regarded, the fact is that the plaintiff was not permitted to remove all of the steel which under his contract he had acquired by purchase.
The defendant argues an insupportable contention, namely, that “ the three girders * • * * were a part of the building as originally constructed, and only the side plates thereof were adapted and utilized as a part of the side of the tanks.” In other words, that the sheets of steel, minus the top and bottom flanges and the bracing angle irons and other pieces of steel necessary to prevent the sheets of steel of %-inch thickness and 20 by 6 ft. in area, from buckling, and in joining the tanks together, might possibly be considered sides of the tanks, although the same sheets of steel, plus the other items just mentioned, constituted longitudinal girders; and secondly it is argued that neither the weight of the sheets of steel in question nor their value has been shown.
There is no justification for the attempted distinction; the metal in question was in its entirety either longitudinal girders which had been made use of as sides of the tanks, *392 or they were the sides of the tanks that had served, along with the weight of the tops and bottoms of the tanks, as a longitudinal brace of the steel frame of the building. There is nothing in the evidence to warrant the former contention over the latter, and there is no distinction, on this score, as regards the contended-for girders, A, B, and C over the exterior sides of the two outer tanks, both of which were braced in the same manner, by angle irons against buckling and equipped with flanges on top and bottom. Tank side or longitudinal girders, whatever the technical description, were not one thing before, and another after, the examination in June by an engineer from the Veterans’ Bureau, when it was determined that A and C, including the sheet steel, the bracing angle irons and top and bottom flanges, could be removed as a part of the tanks. If they were removable in June under, the terms of the contract of purchase, it was because they were part of the tanks purchased by the plaintiff, and there is no distinction between B, on the one hand, and A and C, on the other.
To justify the position taken by the defendant under the contract, the possibility of excluding a part of the tanks should have been reserved before acceptance of the plaintiff’s bid, by saving clauses which would have put the plaintiff on notice, as in Maguire & Company v. United States, 59 C. Cls. 575, affirmed 273 U. S. 67, and Mottram v. United States, 59 C. Cls. 302, affirmed 271 U. S. 15.
The tender of sale of the four elliptical tanks being without limitations and plaintiff having paid for the material exhibited to him he was entitled to possession of same, or the value of such portion as was withheld.
The plaintiff’s testimony in this case satisfies the court as to its accuracy and truthfulness. His conduct in the transaction was characterized by willingness and desire to do the fair and honest thing by the Government, and he therefore placed entire reliance upon the representation, as he understood it,- of adequate remuneration, and responded promptly and efficiently to the orders given him by the defendant’s officials, rather than assume an attitude of insistence upon *393 compliance with the strict requirements and rights under his contract.
The defendant makes an argument of settlement of the claim for a good consideration by the return to plaintiff of his certified check for $1,000 posted as a security for the proper performance of his contract, citing three cases, none of which supports the contention in so far as the present action is concerned. The deposit by plaintiff of his certified check for $1,000 was to secure the Government against any damage plaintiff might do to the building or the material not covered by the terms of his contract. Upon the completion of his operations, there being no damage attributable to him, his check was released. There was not even a pretense at that time that the return to plaintiff of his check for $1,000 was for any other purpose.
The cases cited relate to payment under settlement contracts upon termination of a previous contract, and involve payment by the United States to the plaintiff.
Judgment for plaintiff for $5,540.55.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Geeen, Judge, concur.