Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff, a New York corporation, was the successful bidder for certain items known as “ ferrous scrap ” offered for sale to the public by the supply- officer of the navy yard in Philadelphia. The facts are indisputable; the single issue is the construction to be given the terms and conditions of sale as they appear in a catalog published and circulated by the Government officials, the plaintiff having received, examined, and acted upon the contents of one. The items upon which plaintiff bid and purchased were listed in the catalog as so many gross tons (more or less) ferrous scrap containing approximately 10% brass, bronze, and copper, from a designated boat.
Plaintiff submitted bids for five items of ferrous scrap, and the catalog disclosing what was included within the items employed precisely the same verbiage as to each, and expressly notified intending bidders that the material to be sold was material resulting from the scrapping by the Government of certain submarine boats. The plaintiff’s representative visited the navy yard, inspected the boats to be *201 scrapped, and on the date of his visit the process of dismantling the boats had not begun. They were still intact, with all the materials to be sold in place. The engines, motors, electrical apparatus, etc., had not been detached, and the plaintiff in this suit contends that included in the term “ ferrous scrap ” were the engines, motors, and electrical apparatus on each of the boats, except when by the terms of the catalog they were expressly reserved from the sale as such.
Plaintiff received and paid for 1,645.62 tons of ferrous scrap containing on an average of approximately fourteen percent of nonferrous material, and, although demand was made, the defendant refused to deliver to plaintiff the engines and material set forth in finding VII.
The court is of the opinion that the facts in the case positively negative the contention of the plaintiff. In the first place a cursory examination of the catalog notified the plaintiff that separate units of merchandise, like Diesel engines, etc., were the subject of special bids, and the mere fact that no express reservation of the same type of units from the sale of scrap resulted from the scrapping of the boats involved in plaintiff’s bid augurs nothing. “ Scrap material ” has a distinct and unmistakable trade meaning decidedly foreign to separate units of Diesel engines, motors, and accessories thereto.
It is immaterial what the representative of the plaintiff thought was embraced within the trade term “ 528 tons (more or less) ferrous scrap from S-50 ”, so long as nothing said in the catalog misled or deceived it. Plaintiff was duly advised that it must rely upon the printed catalog and make its bid accordingly, for no representative of the United States was authorized under any circumstances to represent or in any way speak as to the terms of sale.
The defendant cites cases which we think define accurately the trade meaning of “ scrap.” In Schlesinger v. Beard, 120 U. S. 264, 267, it was said:
“ They are not old in the sense of having been worn by use, but the are scrap, and no longer capable of any use until remanufactured, because in their use they have been *202 rendered worthless for any purpose except to remanufac-ture.”
In Northwestern Cooperage Co. v. Rubinsky, 180 Mich. 413, a case somewhat similar to the one in suit, the court said:
“ It appears to be defendant’s claim that he was entitled to receive everything of metallic character belonging to plaintiff that went through the fire. Expert evidence was offered on the part of plaintiff as to what the term ‘ scrap iron ’ included. We are satisfied that it cannot be held to include any material which is in a condition which will permit of repair. The' correspondence clearly shows that the engines and dynamo were shipped by plaintiff for the purpose of repair, and that they were all repaired, with the exception of two of the engines, which turned out upon examination to be too badly burned to permit a restoration.”
The case of Fearson v. United States, 75 C. Cls. 381, is not apropos. In the Fearson case this court found that the plaintiff purchased elliptical steel tanks and that when removal of the same became necessary he was prevented from so doing on the ground that their removal would endanger the building in which located. The only issue in the case was as to whether the plaintiff received the tanks. The trade distinction between scrap material and Diesel engines, motors, and motor accessories is so pronounced that it is difficult to conceive why an experienced dealer in general merchandise should not have at once recognized it.
The petition will be dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and GtReeN, Judge, concur.