## SCHLESINGER *v.* BEARD.

## SCHLESINGER *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MASSACHUSETTS.

Argued January 13, 1887. — Decided January 31, 1887.

Punchings and clippings of wrought iron boiler plates and of wrought
    sheet iron, left after the completion of the process of the manufacture of
    the boiler plates into boilers, and of the end of bridge-rods and beams of
    wrought iron, cut off to bring the rods and beams to the required length
    and to remove imperfections, were in "actual use," within the meaning
    of the statute, in the manufacture of those respective things, and on
    importation into the United States are subject to duty as "wrought scrap
    iron."

Two actions at law: the first to recover back duties alleged
to have been illegally exacted; the second, to recover additional
duties after delivery of the goods. Judgment against the im-
porters, who sued out these writs of error. The case is stated
in the opinion of the court.

*Mr. L. S. Dabney* and *Mr. William S. Hall* for plaintiff in
error.

*Mr. Solicitor General* for defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

These cases involve substantially the same questions, and
may be considered together. One is a suit by Naylor & Co.,
importers, against Beard, the collector of customs in Boston,
to recover back duties alleged to have been illegally exacted,
and the other is a suit by the United States against the same
importers to recover additional duties assessed on the liquida-
tion of an entry after the delivery of the goods upon payment
of estimated duties.

The facts are these: In October, 1879, Naylor & Co., imported into the port of Boston from England 170 tons of wrought scrap iron, consisting "of the punchings and clippings of wrought iron boiler plates and wrought sheet iron, left after the process of the manufacture of the boiler plates into boilers was completed, and of the ends of bridge rods and beams of wrought iron, cut off to bring the rods and beams to the required length, and to remove imperfections." When the entry was made at the custom house, the duties were estimated upon the whole at the rate of eight dollars per ton. On the payment of this estimate the iron was delivered to the importers. Afterwards, 263,332 pounds were classified by the customs officers as "new wrought scrap iron," and an additional duty of $1611.92 charged thereon. For the recovery of this amount the suit in favor of the United States was brought.

In November, 1879, the same parties imported from England 200 tons of wrought scrap iron, consisting entirely of punchings and clippings, such as are described above. Upon this entry 280,995 pounds were classified as "old wrought scrap iron," and charged with duty at the rate of eight dollars per ton, and 138,400 pounds as "new wrought scrap iron," and charged at the rate of one cent a pound. The importers paid the duties assessed under protest as to the last item, and then sued to recover back $889.70, the difference between the duties at eight dollars per ton and the amount actually paid.

It was agreed that the punchings, clippings, and ends were all waste iron and incapable of being further used, and that they were only fit for remanufacture. The only actual use to which they had been subjected was in the making of boilers from the plates out of which they had been cut in the process of manufacture, and in the building of bridges of which the rods and beams that had been cut to adapt them to their places formed a part. The importer claimed that all were dutiable as "wrought scrap iron," under Schedule E of § 2504 of the Revised Statutes, p. 466, while the collector claimed that the part classified as "new wrought scrap iron" was subject to a duty of one cent a pound, as "iron less finished than iron in bars and more advanced than pig iron," because it had not been in "actual use."

The court below gave judgment in each of the suits against the importers, to reverse which these writs of error were brought.

The provisions of the tariff act on which the cases depend are the following clauses in Schedule E of § 2504 of the Revised Statutes:

1. p. 464. "But all iron in slabs, blooms, loops, or other forms, less finished than iron in bars, and more advanced than pig iron, except castings, shall be rated as iron in bars, and pay a duty accordingly," *i.e.* one cent per pound.

2. p. 466. "Cast scrap iron of every description: six dollars per ton.

"Wrought scrap iron of every description: eight dollars per ton. But nothing shall be deemed scrap iron except waste or refuse iron that has been in actual use, and is fit only to be remanufactured."

This particular form of provision as to scrap iron, both cast and wrought, appeared for the first time in the act of July 14, 1870, c. 255, § 21, 16 Stat. 264, from which it was carried into the Revised Statutes. The earlier statutes were as follows:

1. An act of July 14, 1832, c. 227, § 2, clause 13, 4 Stat. 588: "That all scrap and old iron shall pay a duty of twelve dollars and fifty cents per ton; that nothing shall be deemed old iron that has not been in actual use and fit only to be remanufactured; and all pieces of iron, except old, of more than six inches in length, or of sufficient length to be made into spikes and bolts, shall be rated as bar, bolt, rod, or hoop iron, as the case may be, and pay duty accordingly."

2. An act of August 30, 1842, c. 270, § 4, clause 3, 5 Stat. 552, which is substantially the same as the act of 1832, excepting only that the duty is reduced to ten dollars per ton.

3. An act of July 30, 1846, c. 74, § 11, schedule 6, 9 Stat. 45, which places among articles subject to a duty of thirty per cent. ad valorem, "iron in bars, blooms, bolts, loops, pigs, rods, slabs, or other form not otherwise provided for; castings of iron; old or scrap iron."

4. An act of March 2, 1861, c. 68, § 7, clause 3, 12 Stat. 181: "On old scrap iron, six dollars per ton: *Provided*, That

nothing shall be deemed old iron that has not been in actual use and fit only to be remanufactured."·

5. An act of June 30, 1864, c. 171, § 3, 13 Stat. 205, which is in the exact language of the act of 1861, except that the duty is raised from six to eight dollars per ton.

It thus appears that in 1870 the form of the statutes on this subject was materially changed, and that now the duty is laid upon "scrap iron," without any reference to whether it is new or old, and that all waste or refuse iron is scrap iron, if it has been in actual use, and is only fit for remanufacture.

That the iron now under consideration was waste iron is conceded; and in our opinion it had been "in actual use" within the meaning of that term as employed in the statute. At one time it formed part of boiler plates used in the manufacture of boilers, or of rods or beams used in building bridges. In order to fit the plates, rods, or beams to the places they were to occupy in the structures of which they were to form a part, these pieces were cut off as useless, and thrown away, or, in the language of the trade, "into the scrap heap." They had become, by the use to which they were put, "scrap iron," in the popular sense of that term, and nothing else. It is true the cuttings and clippings had never themselves been used in the boilers or in the bridges, but they had been used in making those structures, and thus had accomplished the purpose for which they were originally manufactured. The plates, rods, and beams of which they were once parts had been used, and these were the waste resulting from that use. They are not old in the sense of having been worn by use, but they are scrap, and no longer capable of any use until remanufactured, because in their use they have been rendered worthless for any purpose except to remanufacture. In the popular sense, as manufactured articles, they have been used up — made worthless by use; and this use has been actual, not colorable only. The plates, rods, and beams were made to be used in a particular way. They have been so used, and these cuttings and clippings are the waste of that use. Consequently they are, in our opinion, "wrought scrap iron," and dutiable as such.

*The judgment in each of the cases is reversed, and the causes remanded, with instructions to enter judgment upon the agreed facts in favor of the importers in the suit against the collector, and against the United States in the suit against the importers.*