## HARLEY CO. *v.* UNITED STATES (No. 2703)[1]

WASTE—JUNK, OLD—RAGS.

Wearing apparel which is still available for use as wearing apparel, or which may be repaired without undue expense and devoted to its original purpose, or which, without remanufacture, has a valuable practical use, is not waste or old junk.   Rags of worn-out wearing apparel, fit for nothing commercially except to be manufactured—some into wiping rags, some into paper, and some into other commodities—if waste, are that class of waste designated in free-list paragraph 1601 of the Tariff Act of 1922 as "Junk, old;" and such unlimited *eo nomine* designation must be preferred to the collector's classification under paragraph 1457 as "Waste, not specially provided for."

United States Court of Customs Appeals, May 8, 1926

APPEAL from Board of United States General Appraisers, Abstract 50299

[Reversed.]

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham,* special attorney, of counsel), for the United States.

[Oral argument March 30, 1926, by Mr. Charles D. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Rags of cotton and of wool and silk, imported at the port of San Francisco, were classified by the collector of customs as waste and assessed for duty at 10 per centum ad valorem under paragraph 1457 of the Tariff Act of 1922, which paragraph reads as follows:

PAR. 1457. Waste, not specially provided for, 10 per centum ad valorem.

The importer protested that the merchandise was free of duty either under paragraph 1516 as waste bagging or under paragraph

[1] T. D. 41644.

1560 as cotton waste, or under paragraph 1601 as junk, or under paragraph 1651 as rags. The paragraphs or parts thereof upon which the importer relies are as follows:

PAR. 1516. Waste bagging, and waste sugar sack cloth.

PAR. 1560. Cotton and cotton waste.

PAR. 1601. Junk, old.

PAR. 1651. Rag pulp; paper stock, crude, of every description, including all grasses, fibers, rags, waste, including jute, hemp, and flax waste, * * * rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth, and old gunny used chiefly for paper making, and no longer suitable for bags.

The Board of General Appraisers overruled the protest and the importer appealed.

A. Glant, manager of Charles Harley Co., testified for the importer that no single sample taken from the shipment would be representative of the shipment; that some of the samples represented white and some colored wiping rags; that some of the rags were roofing rags and not wiping rags; that some of the rags were fit only for paper stock, and that each bale of the importation contained wiping rags, roofing rags, and paper stock, indiscriminately mixed; that the wiping rags had to be cleaned and trimmed before they became fit for use as wiping rags; that wiping rags were often sent to the laundries and washed before they were put upon the market as wiping rags; that all of the merchandise was invoiced as white wiping rags and colored wiping rags, and that all of the rags were purchased under those names; *that, when wiping rags are cleaned and trimmed, they are not sold as junk, but as wiping rags;* that from 50 to 75 per centum of the importation is suitable for wiping rags and that a dirty wiping rag is a wiping rag; that the importation would be sold as composed in part of wiping rags and in part of roofing rags, and that such rags are sometimes sold without grading, sorting, cleaning, or trimming; that there is a grade of wiping rags known as unwashed wiping rags; that rags which have not been sorted are mixed rags, and that rags like the importation would be sold as mixed unsorted wiping rags, regardless of color; that the term junk has a very definite and certain meaning in the trade, and that it includes everything *commonly* known as junk; that it includes rags, scrap rubber, scrap metal, scrap iron, and scrap rope; that rags suitable for paper stock are junk, as that term is commercially understood; that wiping rags and rags for paper stock are included in the term junk, as that term is used in the trade.

Joseph Scherman, a dealer in rags and paper, testified for the importer that the word "junk," as used in the trade, is a general term which refers to everything; that whether rags are used for paper stock or for wiping rags they are still junk; that the size of

wiping rags is twice the size of a man's handkerchief; that rags may have holes in them and still be perfectly good wiping rags; that he never bought or sold wiping rags as junk; that wiping rags were described in the invoices as wiping rags and not as junk; that the importation was foreign wiping rags; that a shipment such as that imported could not be sold as wiping rags; that rags suitable for wiping rags would be obtained by sorting out of the shipment rags having the proper size, shape, and quality for wiping rags; that, after sorting, the rags are conditioned by cleaning them, removing the buttons, and trimming them; that some of the rags in the shipment are wiping rags and some are not.

Samuel Hoffman, a junk dealer, testified for the importer that the term "junk" included rags, sacks, iron, metal, etc.; that goods such as the importation are not bought and sold as junk, but under their specific name, that is to say, rags are bought as rags, and scrap iron under the name of scrap iron, but that both are generally known as junk; that some of the rags of the importation are of cotton, some of silk, and some of wool and cotton; that wiping rags is a term well known in the trade, and that wiping rags must be of a size exceeding a foot square and containing approximately 4 square feet; that, after wiping rags are sorted out from an importation of mixed rags, they are conditioned by *grading*, *trimming*, sterilizing, and *washing* them before selling them as wiping rags; that, under the laws of California, wiping rags can not be sold without being washed, conditioned, and fumigated; that wiping rags are used for wiping machinery, windows, and, in fact, anything that requires wiping.

In support of the appeal, it is contended by counsel for the appellant that the merchandise is either junk or cotton waste. Apparently "junk" was originally a nautical term which included old or condemned cable and cordage, cut into small pieces, which were used, either as cut or after untwisting, for the making of points, gaskets, swabs, mats, etc., or, when picked into fibers, for the making of oakum. That meaning of the term, however, was extended long ago and includes worn-out and discarded material of any sort, especially worn-out and discarded old rope, chain, iron, copper, bottles, parts of machinery, and odds and ends, gathered or bought up by tradesmen called junk dealers. See "Junk"—New Standard Dictionary; see "Junk"—Century Dictionary and Cyclopedia.

The Government argues that the importation is waste not specially provided for, dutiable at 10 per centum ad valorem under paragraph 1457.

Waste is something rejected as worthless or not needed; surplus or useless stuff; *especially the refuse of a manufacturing process or industrial art, as coal dust or gob;* tangled spun thread (usually cotton);

the refuse of a textile factory; *cotton waste, the refuse of cotton manufacture, used to clean machinery and for packing for axle boxes; broken or spoiled castings for remelting.* See "Waste" and "Cotton waste"— New Standard Dictionary; see "Waste"—Century Dictionary and Cyclopedia.

Since 1883 Congress has recognized the following as wastes:

Wool waste, including bur waste, top waste, card waste, roving waste, slubbing waste, thread waste, ring waste, yarn waste, garnetted waste, wool rag waste, silk waste, cotton waste, hemp waste, jute waste, shavings, clippings, old paper, rope ends, waste rope, waste bagging, old gunny cloth, old gunny bags, cork waste, scrap or refuse rubber, worn out by use, iron and steel fit only for remanufacture.

Act of 1883, schedules K and N.
Act of 1890, paragraphs 388 and 549.
Act of 1894, paragraphs 279, 458, 577, 617, and 685.
Act of 1897, paragraphs 362, 463, 632.
Act of 1909, paragraphs 118, 372, 373, 479, 548, 591, 644.
Act of 1913, paragraphs 250, 384, 408, 566, 599, 651.
Act of 1922, paragraphs 1105, 1457, 1516, 1651.

The acts of 1883, 1890, 1894, 1897, 1909, and 1913 provided for "junk, old." That designation meant a manufactured article rendered unsuitable for the purpose for which it was originally made, which thereby became fit only for remanufacture and had no value other than that of a manufacturing material. Of course, if a manufactured article is reasonably fit for the purpose for which it was originally intended and is practically available for such use, or has a value in addition to that of a mere material, it is not old junk. So wearing apparel which is still reasonably available for use as wearing apparel, or which may be repaired without undue expense and devoted to its original purpose, or which, without remanufacture, has a valuable practical use, is not waste or old junk. *Carberry* v. *United States*, 116 Fed. 773; *Downing* v. *United States*, 122 Fed. 445, 446, 447; *Ginsburg & Sons* v. *United States*, 147 Fed. 531, 532; *Ill. Cent. Ry. Co.* v. *McCarl*, 147 Fed. 925; *Dwight* v. *Merit*, 140 U. S. 213.

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. The latter class of waste might be appropriately designated as new waste and includes such things as tangled spun thread, coal dust, broken or spoiled castings fit only for remanufacture. T. D. 33376; *Willets* v. *United States*, 11 Ct. Cust. Appls. 499, 500, 501; *Schlesinger* v. *Beard*, 120 U. S. 264;

*Seeberger* v. *Castro*, 153 U. S. 32; *Patton* v. *United States*, 159 U. S. 500, 505, 509; *Latimer* v. *United States*, 223 U. S. 501–503.

The evidence in this case establishes that the goods imported are rags. They are fit for no commercial use except that of remanufacture into wiping rags, paper, or some other commodity. Some of the rags can be made into wiping rags, but before they can be used as wiping rags they must be trimmed, cleaned, and divested of any buttons attached to them. Wiping rags are articles of ultimate consumption, and, if rags are unfit for use by the ultimate consumer for the cleaning of windows, machinery, and cleansing purposes, they are not suitable for wiping purposes and can not be regarded as wiping rags. By further processing, rags of suitable size, shape, and quality can be converted into wiping rags, but, in their condition as imported, the rags under consideration are not wiping rags. The merchandise is not new waste, but at best that class of waste known as junk, old, and as junk, old, is *eo nomine* provided for without limitation in paragraph 1601 of the free list, that provision must prevail as against paragraph 1457, which covers only waste not specially provided for.

The rags should have been classified as junk, old, and the judgment of the board overruling the importer's protest must therefore be *reversed.*