UNITED STATES *v.* KATZENSTEIN & KEENE ET AL. (No. 2999[1])

United States Court of Customs Appeals, May 7, 1928

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham*, special attorney, of counsel), for the United States.

*Allan R. Brown* for appellees.

[Oral argument February 16, 1928, by Mr. Higginbotham and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Rags, imported at the port of New York, were classified by the collector of customs as waste not specially provided for and assessed

---
[1] T. D. 42754.

for duty at 10 per centum ad valorem under paragraph 1457 of the Tariff Act of 1922, which paragraph reads as follows:

1457. Waste, not specially provided for, 10 per centum ad valorem.

The importer protested that the merchandise was not dutiable as found by the collector and claimed that the rags were entitled to free entry either as cotton waste, old junk, or as paper stock. The pertinent parts of the free list upon which the importer relies are as follows:

SEC. 201. That on and after the day following the passage of this act, * * * the articles mentioned in the following paragraphs, when imported into the United States * * * shall be exempt from duty:

1560. Cotton and cotton waste.
1601. Junk, old.
1651. Rag pulp; paper stock, crude, of every description, * * *

The United States Customs Court held that the goods imported were either cotton waste or old junk and that they were, therefore, entitled to free entry either under paragraph 1560 or under paragraph 1601. From the judgment of the Customs Court sustaining the protest the Government appealed.

On the hearing before the Customs Court Harry A. Brody, called as a witness on behalf of the importer, testified that he was a member of the firm of Loveland & Co.; that he bought and sold merchandise for the firm; that the goods marked with the various protest numbers were of mixed grades but that they were all used for paper making; that he based his answer as to the use of the rags on the amount of tonnage of such rags used by paper-manufacturing mills located in Wisconsin, New England, Pennsylvania, and the States of the Middle West, and that the mills of those States are the principal paper-manufacturing concerns of the country; that there are rags known as wipers or wiping rags, but that the firm to which the witness belonged did not deal in them; that paper can be made out of wiping rags; that he never bought or sold any of the rags represented by the exhibits as junk.

Joseph F. Keene, treasurer of Katzenstein & Keene, testified on behalf of the importers that said firm had been in the business of importing rags and paper-making supplies for 12 years; that about 80 per centum of the shipment of rags to Katzenstein & Keene was delivered at the place of business of that firm and that there the bales were cut open and the rags sorted by women, who opened the seams of the rags and removed therefrom the buttons and hooks and eyes; that after so processing the rags, Katzenstein & Keene attempted to sell them as wiping rags, but that they were rejected absolutely by the concerns to whom they were sold, or accepted on condition that a rebate in the price would be made, with the result that anticipated profits were converted into a loss; that the rags were rejected

as wiping rags for the reason that most of them were too small and tender for wiping rags and could not be used or sold at a profit as a wiping rag; that 90 per centum of all rags collected are used for paper making and the rest for roofing felt, shingles, fiber board, and phonographic records; that from his 12 years' experience he could say there were two outlets for rags like those imported, one paper making and the other junk; that rags such as those imported are not sorted or treated before shipment and are exported in the condition in which they were when received from the peddler or small dealer; that he thought it was impossible to represent rag shipments by samples, and that the official samples taken in the case did not fairly represent the importation. On cross-examination Keene said that there was a rag which was known definitely, uniformly, and generally throughout the trade as a wiper or wiping rag, and that to be a wiping rag a rag had to be thin, absorbent, washed, trimmed, of a certain texture, and of a minimum size of 12 inches by 12 inches; that after importation he sorted out the rags large enough for wiping purposes, removed the seams, buttons, hooks, and eyes, and cut them properly; that he bought the rags as wipers and sold them as wipers, but that purchasers from his firm refused to accept the rags as wiping rags because they were not saleable for that purpose; that the rejected rags were resorted, repacked, and resold as wipers and again rejected, with the result that an allowance had to be made; that some of the merchandise was sold to the United States Navy, but the merchandise so sold was not in its imported condition; that while rags might be found in every bale suitable for wipers, they could not be sold as wipers until further processed.

Gustav Boniface testified on behalf of the Government that from 1918 to 1924 he was superintendent of the Economy Wiping Material Co.; that there are "three grades of wiping rags known as No. 1, No. 2, No. 1 white, and No. 2 white"; that Exhibit C was known as a No. 2 wiper because it was not a perfectly clean rag; that Exhibit D, consisting of two or three small rags tied together, if found in a bale would be known as a wiper, but that if the bales were resorted it would be thrown out as paper stock; that the term "wiper" is frequently applied to small pieces of paper stock; that if all the pieces in the bale were like Exhibit D they would be unfit to be classified as wipers. On cross-examination Boniface testified that bales of imported rags were opened after importation and that the rags were sorted, washed, sterilized, and rebaled, those of doubtful quality being set aside for sale as paper stock; that the smallest size wiper is 12 by 12, but that that size is not always respected in the trade and sometimes smaller pieces are sold as wipers; that if rags were sold as imported from the foreign packer, they might be rejected by the purchaser of wipers if the bales contained too many small

pieces; that the term "wipers" is not confined to cotton rags and that the term "wipers" includes even rags that are not fit for wiping material; that it would not pay to sort a bale containing 50 per centum of small stuff; that the trade would not buy such a bale as wipers; that he could not recall that the Economy Wiping Material Co. had rejected rags purchased from Katzenstein & Keene as wipers.

Louis Rothenberg testified for the Government that Rothenberg & Sons (Inc.) were dealers in wiping rags and woolen rags; that wiping rags are composed of cotton and are not woolen rags; that the minimum size of a wiper or wiping rag is about 12 inches square; that there are four or five grades of rags designated as No. 1 colored, No. 2 colored, No. 1 white, No. 2 white, and washed wipers; that all grades of wiping rags are washed but that there is a grade of washed rags known as clean packed; that wiping rags are not bought and sold as junk; that it did not make any difference whether wiping rags were clean or dirty; that a rag 2 feet square with buttons, hooks, and eyes attached, and containing heavy seams would be known as a wiper or wiping rag; that if the rag was clean it was a clean wiper; that if it was soiled it was a soiled wiper; that wipers in the years 1923, 1924, 1925, and 1926 were sold for about 8 cents per pound and paper stock for about 4 cents per pound; that he had examined the exhibits of the merchandise, the subject of protest, and that they were wipers or wiping rags; that wipers containing buttons and seams could be used on machinery and for polishing purposes; that wipers without buttons were used mostly for finer work and automobile cleaning; that merchandise represented by the exhibits was sold as wipers; that in some cases such rags are sold as they are, but "if the man is a kind of particular trade, we have to take the buttons off." On cross-examination the witness testified that sometimes wipers were cleaned, washed, and sorted as to color before selling them; that the firm of Rothenberg & Sons (Inc.) sells mostly to jobbers who cater to the trade; that the concern does not sell much to machine shops but to jobbers; that he could not remember whether his concern had bought a shipment of rags from Katzenstein & Keene and rejected them as wipers; that when necessary and in order to fill orders, rags were trimmed before the sale of them as wipers; that when the rags are sold to a dealer they are sold just as they are; that the rags are called wipers.

Joseph F. Keene, recalled to testify in rebuttal for the importer, testified that the firm of Katzenstein & Keene sold some of the rags under protest to Rothenberg and also to the Economy Wiping Material Co.; that such sale was made to said firms after the importation had been resorted and repacked and that both firms accepted some of the bales so resorted and repacked and rejected others; that the rags were rejected because of their poor quality; that the amount

accepted by Rothenberg and the Economy Wiping Material Co. was small. A telegram and 12 letters from purchasers of the importation were introduced in evidence. Those letters disclosed that the rags were unfit for use as wiping rags and had been unconditionally rejected by almost every purchaser.

An analysis of all the evidence in the case establishes, first, that the rags are packed and shipped in the condition in which they were when received from the small peddlers; second, that about 80 per centum of the importation was delivered at the business place of Katzenstein & Keene and that there the bales were broken open and the rags sorted by women, who trimmed them and removed the seams, buttons, hooks, and eyes; third, that the rags so processed were sold as wipers, but that they were rejected by the purchasers and were resorted and once more sold as wipers, with the result that 80 per centum of them were again rejected and 20 per centum retained because they could not be returned to Katzenstein & Keene without loss to the purchasers.

We are of the opinion that the weight of the evidence in the case clearly establishes that the rags in their imported condition were not wipers and would not be accepted by the trade as a good delivery of wipers.

The goods are worn out or discarded manufactured articles which, by reason of use or wear and tear, have been rendered unsuitable for the purpose for which they were originally made and are fit only for remanufacture. They are, therefore, waste, but belong to that particular class of waste appropriately designated as "old waste" or "junk, old." *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, 114, 115, T. D. 41644.

The rags are entitled to free entry as "junk, old," and the judgment of the United States Customs Court is *affirmed*.