UNITED STATES *v.* C. J. TOWER & SONS (No. 4449)[1]

---

[1] C. A. D. 271

186

United States Court of Customs and Patent Appeals, March 6, 1944

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel) for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.
[Oral argument December 9, 1943, by Mr. Donohue and Mr. Schwartz]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division.

Merchandise, consisting of "old discarded junk X-ray films, in chief value of cellulose acetate, which have been exposed and developed, and are no longer fit for use in taking an X-ray or other pictures," was assessed for duty by the collector at the port of Buffalo, N. Y., as waste wholly or in chief value of cellulose acetate, at 25 cents per pound under paragraph 31 (a) (1) of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, which became effective January 1, 1939 (T. D. 49753).

The importer protested, claiming, among other things, that the merchandise was properly dutiable as waste, not specially provided for, at 7½ per centum ad valorem under paragraph 1555 of the Tariff Act of 1930, as modified by the aforesaid trade agreement.

The rate of duty provided in paragraph 1555 of the Tariff Act of 1930 was lowered from 10 per centum ad valorem to 7½ per centum ad valorem by the trade agreement.

Paragraph 31 (a) of the Tariff Act of 1930 reads as follows:

PAR. 31. (a) Cellulose acetate, and compounds, combinations, or mixtures containing cellulose acetate:

(1) In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms, whether or not colloided, and waste wholly or in chief value of cellulose acetate, all the foregoing not made into finished or partly finished articles, 50 cents per pound;

(2) made into finished or partly finished articles of which any of the foregoing is the component material of chief value, and not specially provided for, 80 per centum ad valorem.

Paragraph 31 (a) (1) as modified by the trade agreement is identical with paragraph 31 (a) (1), *supra*, except that the rate of duty has been lowered from 50 cents per pound to 25 cents per pound by the trade agreement. Paragraph 31 (a) (2), which had been modified by a trade agreement with the French Republic (concluded May 6, 1936, T. D. 48316), was not expressly referred to in the trade agreement with the United Kingdom.

The trial court, in an opinion by Oliver, Presiding Judge, stated that it agreed with counsel for the parties that the merchandise was waste, and quoted from our decision in the case of *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644, as follows:

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. The latter class of waste might be appropriately designated as new waste and includes such things as tangled spun thread, coal dust, broken or spoiled castings fit only for remanufacture. T. D. 33376; *Willets* v. *United States*, 11 Ct. Cust. Appls. 499, 500, 501; *Schlesinger* v. *Beard*, 120 U. S. 264; *Seeberger* v. *Castro*, 153 U. S. 32; *Patton* v. *United States*, 159 U. S. 500, 505, 509; *Latimer* v. *United States*, 223 U. S. 501–503.

As appears from the quoted statement in the *Harley Co.* case, *supra*, there are two kinds of waste; namely, one, a manufactured article which, because of use or otherwise, has become useless for the purpose for which it was designed and is fit only for remanufacture; and, two, so-called "new waste," which is refuse material resulting from a manufacturing process and which is commercially unfit without remanufacture for the purpose for which the original material was suitable.

The trial court stated in its opinion that, as the involved merchandise was waste in chief value of cellulose acetate, the question presented was whether it was of the class or kind of waste intended by the Congress to be included in paragraph 31 (a) (1), *supra*, as modified by the trade agreement.

No change having been made in paragraph 31 (a) (1), *supra*, by the framers of the trade agreement, except as to the rate of duty, the court was obviously right in its statement as to the issue presented.

The trial court further stated that the language of paragraph 31 (a) (1) "leaves some doubt as to just what waste was intended to be covered" thereby.

The court having found that the provisions in question were ambiguous, although counsel for the Government contend that it did not, turned to the legislative history of those provisions in an effort to ascertain whether waste like that here involved was intended by the Congress to be included in the provision in paragraph 31 (a) (1) for "waste wholly or in chief value of cellulose acetate." In so doing, the court called attention to the following facts: That the provision for waste wholly or in chief value of cellulose acetate appeared for the first time in the Tariff Act of 1930; that, as passed by the House of Representatives, paragraph 31 (a) (1) of H. R. 2667 (H. R. 2667 later became the Tariff Act of 1930) provided for waste in the following language: "cellulose acetate rayon waste and other cellulose acetate waste"; that the Senate Committee on Finance deleted that provision and substituted in lieu thereof the provision as it appears in paragraph 31 (a) (1), *supra*, to wit, "waste wholly or in chief value of cellulose acetate" (amendment No. 69), and reported to the Senate (Report No. 37, page 5) as follows:

The phrase "cellulose acetate rayon waste and other cellulose acetate waste" was stricken out of the House bill and "waste wholly or in chief value of cellulose acetate" inserted in lieu thereof. The new language is intended to cover the cellulose acetate waste resulting from the manufacture of blocks, sheets, rods, and other forms as well as from the manufacture of the above forms into finished articles. In addition, it is intended to cover the waste filaments, fibers, and yarns from cellulose actate artificial silk * * *;

that the Senate adopted the committee's amendment; and that, relative to that amendment, the conferees representing the House of Representatives advised acceptance of the Senate amendment, and in Conference Report No. 1326, page 36 (71st Congress, 2nd Sess.), reported as follows: .

. Amendment No. 69: This amendment is a clarifying amendment to make certain that the rate provided will apply to all waste wholly or in chief value of cellulose acetate; and the House recedes. .

. The trial court concluded that it was the purpose of the Congress to limit the provision for waste wholly or in chief value of cellulose acetate, contained in paragraph 31 (a) (1), *supra*, to so-called "new waste," that is, refuse material resulting from the manufacture of blocks, sheets, rods, and other forms provided for in paragraph 31 (a) (1), *supra*, as well as waste resulting from the manufacture of such forms into finished articles, and waste filaments, fibers, and yarns from cellulose acetate artificial silk, as stated in the Report of the Senate Committee on Finance; that it was not the intention of the Congress to include in the provision in question waste such as that here involved, and, accordingly, held that the involved waste was dutiable as claimed by the importer at 7½ per centum ad valorem under paragraph 1555, *supra*, as modified by the trade agreement.

We are in agreement with the trial court that, when considered in the light of the other provisions in paragraph 31 (a) (1), the provision for "waste wholly or in chief value of cellulose acetate" is not free from ambiguity, and that resort to its legislative history is not only proper but necessary in order to ascertain its intended meaning.

It is the contention of counsel for the Government that the quoted report of the Senate Committee on Finance was not intended to indicate that the provision for waste, here under consideration, was to be limited to so-called "refuse" or "new waste," and that the report of the conferees representing the House of Representatives, wherein it was stated that the Senate amendment was a clarifying amendment and was intended to make certain that the rate of duty provided in paragraph 31 (a) (1) should "apply to all waste wholly or in chief value of cellulose acetate," clearly indicates that it was the intent of the Congress that the provision for waste in that paragraph should include not only "new waste" but also manufactured articles wholly or in chief value of cellulose acetate which have become useless for their intended purpose and which are fit only for remanufacture.

We are unable to concur in the views urged upon us by counsel for the Government.

In a document compiled by the United States Tariff Commission, entitled "Supplement to Tariff Information on Items in Tariff Bill of 1930 (H. R. 2667), Subject to Conference," at page 32, the commission quoted the hereinbefore-quoted report of the Senate Committee on Finance, and said:

Under the act of 1922, artificial silk waste was dutiable under paragraph 1213 at 10 per centum ad valorem. Under the bill, cellulose acetate rayon waste has been excepted from paragraph 1302 and included in paragraph 31 (a) (1) at the same rate as blocks, sheets, and other forms.

\* \* \* \* \* \* \*

The cellulose acetate is the raw material for (1) the artificial silk industry and (2) the plastic, film, and lacquer industries.

*The waste filaments of fibers of cellulose acetate serve the same purpose as cellulose acetate powder or other forms which are dutiable under paragraph 31 as cellulose acetate, and are directly competitive with it.*

The *waste filaments and fibers* from the viscose, cuprammonium, and nitrocellulose processes are of small value as compared with the *cellulose acetate waste filaments and fibers.* [Italics not quoted.]

Paragraph 1213 of the Tariff Act of 1922 provided, among other things, for "Artificial silk waste, 10 per centum ad valorum; artificial silk waste, *not further advanced than sliver or roving,* 20 cents per pound, but not less than 25 per centum ad valorem \* \* \*." [Italics ours.]

It will be observed that paragraph 1213, *supra,* provided for artificial silk waste *and also for such waste advanced in condition,* but not "further advanced than sliver or roving."

In the Summary of Tariff Information, 1929, Vol. 2, page 1791, the Tariff Commission reported that paragraph 1213, *supra*, included "waste by-products obtained" in the manufacture of "textile fibers and other materials" and "secondary products derived therefrom." On page 1793, the commission reported that—

Artificial silk waste includes material discarded in the manufacture of artificial silk yarns and waste occurring in textile mills in the process of knitting, weaving, or braiding artificial silk yarn.

The greater proportion of artificial silk waste on the market consists of waste obtained in the spinning and winding departments of artificial silk mills. This type is employed as the raw material of the artificial silk top industry for manufacture into spun artificial silk and union yarns. Reeling waste and mill waste, consisting of broken pieces of yarn, are "hard" wastes; these have to be garnetted to reduce them to a fibrous state ready for reworking.

On page 1794, under the heading "Artificial Silk Waste not Further Advanced than Sliver or Roving," the commission reported that—

*Sliver is the chief intermediate product in the manufacture of spun yarns from artificial silk waste.* (See following section.) Sliver is composed of long, straight, parallel filaments, resulting from the combing of high-grade untwisted artificial silk waste into a soft, loose rope or strand of long fibers wound into balls and commercially known as tops. \* \* \*.

On page 1795, in the "following section" referred to by the commission, it is stated that "Artificial silk yarns known as 'spun yarns' are made from artificial silk wastes and from short-cut lengths of artificial silk, known as staple fiber, which are combed into tops and then spun on the woolen and worsted system or the cotton-yarn system."

Paragraph 1302 of the Tariff Act of 1930 provides:

PAR. 1302. Waste of rayon or other synthetic textile, *except waste wholly or in chief value of cellulose acetate,* 10 per centum ad valorem; filaments of rayon or other synthetic textile, not exceeding thirty inches in length, other than waste, whether known as cut fiber, staple fiber, or by any other name, 25 per centum ad valorem; noils of rayon or other synthetic textile, 25 per centum ad valorem; garnetted or carded rayon or other synthetic textile, 10 cents per pound and 25 per centum ad valorem; *sliver, tops, and roving, of rayon or other synthetic textile,* 10 cents per pound and 30 per centum ad valorem. [Italics ours.]

It is evident, we think, from the provisions of paragraph 1302, *supra*, that the waste therein provided for is so-called "refuse" or "new waste," that is, waste resulting from manufacturing processes. As that paragraph expressly excepts from its operation "waste wholly or in chief value of cellulose acetate," which is expressly provided for in paragraph 31 (a) (1), *supra*, we think it is clear, when consideration is given to the legislative history hereinbefore set forth, that the conferees representing the House of Representatives had no intention of indicating in the report hereinbefore quoted that the provision for "waste wholly or in chief value of cellulose acetate," contained in Senate amendment No. 69 to H. R. 2667, was intended to apply to manufactured articles wholly or in chief value of cellulose

acetate which through wear or otherwise had become useless for their original purpose and were fit only for remanufacture.

Furthermore, we are of opinion that it was the purpose of the Congress in enacting the provision for "waste wholly or in chief value of cellulose acetate," contained in paragraph 31 (a) (1), *supra*, to provide only for refuse or so-called "new waste," resulting from the manufacture of products such as those provided for in that paragraph.

For the reasons stated, the judgment of the United States Customs Court is *affirmed*.