**No. 56585.**—American Silk Spinning Company *v.* United States, protests 154331–K and 154332–K (Providence).

FORD, Judge: The two suits listed above were filed by the plaintiff seeking to recover certain sums of money alleged to have been illegally exacted as customs duties upon importations of silk from Japan. The merchandise was classified as "Silk Noils" and duty levied thereon at the rate of 35 per centum ad valorem under paragraph 1201 of the Tariff Act of 1930. In these two protests the plaintiff alleges that "* * * the material should come in free either under Paragraph 1762 Silk Waste or Paragraph 1201 because material is not degummed."

For ready reference the two paragraphs of the Tariff Act of 1930, here involved, are copied below:

PAR. 1201. Silk partially manufactured, including total or partial degumming other than in the reeling process, from raw silk, waste silk, or cocoons, and silk noils exceeding two inches in length; all the foregoing, if not twisted or spun, 35 per centum ad valorem.

PAR. 1762. Silk cocoons and silk waste.

At the trial these two cases were consolidated for the purpose of hearing and decision. A sample of the imported merchandise was admitted in evidence and marked exhibit 1, subject to certain qualifications as to the length of the fiber, etc. There was also marked in evidence as illustrative exhibit A a sample of that which Mr. Lownes, president of the importing company, recognizes as silk noils. Illustrative exhibit B is, according to plaintiff's witness Nones, "* * * a skein of raw silk which has been cut, and the original tie band is in here to show the diamond crossings and how I had described the production of raw silk a moment ago." The defendant offered and there was received in evidence as illustrative exhibit C a sample of merchandise which was described by witness Nones as ordinary filature silk waste.

In view of the state of this record, and with particular reference to the claims made in the protests, and the conclusion we have reached, we do not deem it necessary to set out in detail all of the evidence in the record before us.

Witness Lownes gave the following definition of a silk noil:

Silk noil is a by-product in the production of spun silk, a residue left over after combing the silk, and invariably is in the boiled-off or degummed state and in short lengths. That is a silk noil.

This witness further testified that, as imported, the involved merchandise was in bales weighing about 400 pounds; that the imported merchandise arrives in this country not in "hanks," but in what is known as "hands"; that as imported the fibers in these "hands" are about 6 feet in length; and that exhibit 1 is a material used in the production of silk yarn, of a much finer grade or quality than silk yarn produced from silk noils, for the reason that the good silk has been taken out of the noils, "the long clean silk has been taken out."

Counsel for the plaintiff also offered the testimony of Mr. Hiram T. Nones who, because of his long experience in the silk industry, was well qualified to testify regarding the matter here in question. The witness stated that:

During the war the Japanese were very short of cotton and wool, because they couldn't import it, and they utilized much of their available silk for a substitute, and in so doing instead of making raw silk of commerce, they reeled up large quantities of it for the purpose of cutting it up into staple lengths to substitute or to mix with cotton, rayon, and wool.

 * * * * * * *

* * * The article was made up very much in the same way as they make raw silk in the regular skeins, but this article was reeled on extra large size reels, and in large bulky skeins without any thought to quality or grade of cocoons used, and there were no customary tie bands put in these large skeins because they were not intended to be unreeled again as raw silk usually is.

 * * * * * * *

After the skein was built up to size, that was of course much larger, some of the reels which they used were with make-shift machinery that they put together for that purpose of producing this new article. It was a wartime measure, and an emergency fiber so to speak. In some mills or in some of the filatures—those are factories where silk is produced from the cocoon, some filatures used the reels that they will customarily make cotton skeins or wool skeins. In this instance the size of the skein had no bearing on its ultimate use. Where they used the reeling machinery, it was generally intended for cotton and wool skeining—those reels are collapsible, so that they can remove the skein from the reel. In other instances the reels were not collapsible, so the only way that the Japanese could remove the skein from the reel was to cut it through and take it off.

The record makes it clear that in the production of the involved and similar merchandise, the silk from the cocoon is reeled onto reels, some collapsible and some noncollapsible; that in the case of the noncollapsible reels, the silk fiber has to be cut in order to remove it from the reel. The only evidence we have in this record concerning the reeling process which was applied to the involved merchandise is that it was reeled from the cocoons onto the noncollapsible reels and was therefore cut in order to remove it from the reel. We must therefore consider all of the imported merchandise as having been cut in order to remove it from the reel. In this condition, it is not in a skein. No further process was applied to the involved merchandise.

This witness further testified, in effect, on the question of whether or not the involved merchandise was a noil, that in a textile process, a silk noil would not come into existence until after carding and combing; that at least three preparatory steps would take place prior to a silk noil being produced. He named and described these operations as textile machinery operations, which would be boiling off or degumming; carding, and combing. The witness then testified that the merchandise in question bears no evidence of having been through any of those operations. "Noil is generally conceded to be a by-product of textile machine operations."

We shall first consider the question of whether or not the plaintiff has established that the collector's classification of the instant merchandise as silk noils exceeding 2 inches in length was erroneous. If the involved merchandise is not, in fact, a

noil, then the fact that the fibers therein are more than 2 inches in length is immaterial.

As long ago as December 15, 1911, the Treasury Department, in T. D. 32085, defined "silk noils" as follows:

Silk noils constitute a by-product in the manufacture of spun silk from waste silk or pierced cocoons. The waste silk or cocoons are (1) sorted, (2) boiled, (3) washed by machinery, and (4) hackled. Silk in this condition constitutes "silk partially manufactured from cocoons or from waste silk," and is dutiable at the rate of 35 cents per pound under paragraph 396 of the tariff act.

In the case of *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T. D. 38966, the Court of Customs Appeals, referring specifically to the above Treasury Decision, held that boiling of silk waste did not make it silk partially manufactured, employing the following language:

The foregoing letter of explanation and instruction deserves especial consideration, since soon after its publication Congress enacted the tariff revision of 1913. And in that revision the language of the act of 1909 which was interpreted in the letter was reenacted without change, except that a dutiable eo nomine provision for "silk noils exceeding two inches in length" was added thereto, in apparent ratification of the position taken by the department in its letter. We may therefore say that the definition given by the foregoing departmental letter has received in a measure the implied approval of Congress also. It is important to note that according to the letter aforesaid waste silk becomes dutiable under the enumeration of "silk partially manufactured from cocoons or from waste silk" when it has been (1) sorted, (2) boiled, (3) washed by machinery, and (4) hackled. This definition plainly contemplates a substantial change in the condition of waste silk before it is regarded as advanced to the dutiable enumeration of partially manufactured silk. The hackling of the waste silk as mentioned in the letter, or any partial or preparatory combing or carding of the material, or complete carding and combing, would respond to this requirement. The present material, however, has not been washed by machinery nor hackled, nor partially nor fully carded or combed, nor treated by any process similar or equivalent thereto. The boiling operation described by the witness should not be given the effect of removing the article from the dutiable status of waste silk and advancing it to that of an article partially manufactured therefrom.

The record establishes that the involved merchandise is not a byproduct of any kind; that the primary object of reeling the silk fibers from the cocoons, as hereinbefore set out, was the production of the merchandise in its condition, as imported, and that it did not result from the manufacture of spun silk from silk waste or pierced cocoons. The cocoons from which the involved merchandise was reeled were not sorted, washed by machinery, and hackled, although the record does show that the cocoons were boiled prior to having the silk fibers reeled therefrom. However, this boiling process described by the witness herein should not be given the effect of bringing this merchandise within the definition of a "noil," as heretofore defined.

Webster's New International Dictionary, 1929, defines "noil" as follows:

**noil.** A piece or knot of short hair or fiber, as a short or waste piece or knot of wool separated from the longer staple by combing, or a similar piece or shred of waste silk; also, such waste pieces collectively.

In *Lobsitz* v. *United States*, 75 Fed. 834, the Circuit Court for the Southern District of New York held that "A 'noil' means the short hair of the camel or sheep, obtained by combing." The above definitions find support in the testimony of the two witnesses who appeared on behalf of the plaintiff at the trial of this case.

In view of the foregoing, we hold that the involved merchandise is not a noil, as classified by the collector. The fact that the fibers are more than 2 inches in length is therefore immaterial.

It is clear from the language employed by the Congress in enacting paragraph 1201, *supra*, that it did not consider total or partial degumming of silk to be within the provision for silk partially manufactured. However, in order to be certain that silk totally or partially degummed be classified as silk partially manufactured, the Congress, after providing for "Silk partially manufactured," added the phrase "including total or partial degumming." If it had been the view of the Congress that the provision for "Silk partially manufactured" covered and included silk totally or partially degummed, there would have been no occasion for the additional words "including total or partial degumming."

However, the Congress also made it clear that it did not intend to include within the classification of "Silk partially manufactured, including total or partial degumming," silk which had been totally or partially degummed if the total or partial degumming were accomplished by the reeling process. This intent is manifest by the additional words "* * * other than in the reeling process." Since the only degumming, total or partial, of the involved merchandise took place in connection with the reeling process, it would be contrary to the congressional intent to include it within the provision for "Silk partially manufactured, including total or partial degumming, * * *." If the involved merchandise had been totally or partially degummed by any process other than in the reeling process, it would then be dutiable as silk partially manufactured, including total or partial degumming.

It appears from the foregoing that the classification made by the collector of the involved merchandise as silk noils exceeding 2 inches in length is erroneous. It also appears that the merchandise cannot find classification under said paragraph 1201 as silk partially manufactured, for reasons heretofore stated.

Having found that the involved merchandise is not classifiable under any of the provisions of paragraph 1201, we turn now to the question of whether or not the plaintiff has established by proper evidence that the merchandise is classifiable under said paragraph 1762, as silk cocoons and silk waste. In its brief filed herein, counsel for the plaintiff makes no point that the merchandise is silk cocoons. We, therefore, need consider only the question of whether the merchandise is silk waste.

In *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644, the Court of Customs Appeals defined the term "waste" as follows:

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. The latter class of waste might be appropriately designated as new waste and includes such things as tangled spun thread, coal dust, broken or spoiled castings fit only for remanufacture. T. D. 33376; *Willets* v. *United States*, 11 Ct. Cust. Appls. 499, 500, 501; *Schlesinger* v. *Beard*, 120 U. S. 264; *Seeberger* v. *Castro*, 153 U. S. 32; *Patton* v. *United States*, 159 U. S. 500, 505, 509; *Latimer* v. *United States*, 223 U. S. 501, 503.

The evidence is not sufficient to establish that the involved merchandise is within the term "waste," as defined in the decisions quoted and cited above. Although the plaintiff has established that the collector's classification is erroneous and that the merchandise is not dutiable under paragraph 1201 of the Tariff Act of 1930, it has failed to establish that the merchandise is free of duty under paragraph 1762 of the Tariff Act of 1930, the only free paragraph claimed in the protests. The claim of the plaintiff is therefore overruled without affirming the action of the collector. Judgment will be rendered accordingly.