(C. D. 1657)

C. J. TOWER & SONS *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 18, 1954)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Arthur R. Martoccia* and *Richard E. FitzGibbon*, trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Lawrence, Judge: By its protest, plaintiff seeks to recover duties alleged to have been incorrectly imposed on certain importations of aluminum ingots from Canada.

The collector of customs assessed duty at the rate of 1½ cents per pound on the merchandise as aluminum in crude form, provided for in paragraph 374 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 374), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (86 Treas. Dec. 121, T. D. 52739), reading as follows:

Aluminum, and alloys (except those provided for in paragraph 302, Tariff Act of 1930) in which aluminum is the component material of chief value; all the foregoing in crude form (not including scrap).

The claim relied upon by plaintiff is that the importations are free of duty as metal scrap, pursuant to Public Law 869 of the 81st Congress, the term of which was extended by Public Law 66 of the 82d Congress to June 30, 1952. The pertinent language of Public Law 869, *supra*, is here set forth—

Sec. 1. (a) No duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the Internal Revenue Code with respect to metal scrap, or relaying and rerolling rails.

(b) The word "scrap", as used in this Act, shall mean all ferrous and nonferrous materials and articles, of which ferrous or nonferrous metal is the component material of chief value, which are second-hand or waste or refuse, or are obsolet, defective or damaged, and which are fit only to be remanufactured.

At the trial, in addition to the testimony of one witness on behalf of plaintiff and another on behalf of defendant, the following stipulation of fact by counsel for the respective parties was presented—

That the imported ingots in their condition and form as imported are used as deoxidizing ingots in the manufacture of iron or steel and are fit only for such use, and that in their use as a deoxidizing agent, the ingot or a portion thereof, is added to the molten steel for the purpose of removing the oxygen, in the course of which the ingot or the portion so used is melted and converted to aluminum oxide and lost as a slag.

A sample of the imported ingots was received in evidence and marked plaintiff's exhibit 1.

Plaintiff's witness Ormonde A. Davies of North Nelson, Ontario, testified that he was superintendent and metallurgist with the General Smelting Co. of Canada, Ltd., at Hamilton, Ontario; that, in 1951 and 1952, his company converted some waste materials such as scrap aluminum recovered from crashed aircraft, aluminum dross, high zinc type aluminum clips, contaminated aluminum turnings, and irony pots and pans into ingots, represented by exhibit 1, which were produced for the Industrial Iron & Machine Co., Ltd., of Toronto, for use only as a deoxidizing agent in the manufacture of iron or steel.

When so used, the ingot or a portion of it is added to molten steel, and in the process of removing the oxygen, the ingot is melted and converted into aluminum oxide and lost as a slag. The record also discloses that the percentage of aluminum required in these ingots for their intended use is from 86 to 88 per centum, the unwanted remainder consisting of the following impurities: Copper, 2 to 5 per centum; zinc, one-half of 1 per centum to 3 per centum; iron, one-half of 1 per centum to 3 per centum; lead, up to three-fourths of 1 per centum; manganese, magnesium, and titanium, a total of 1 per centum; silicon, 1 per centum to 4 per centum.

There is no dispute regarding the origin, method of production, character, nature, and use of the imported product.

Defendant introduced the testimony of Isadore Schnopper, a chemist in the United States Customs Laboratory at New York. This witness who had analyzed the imported commodity testified that it would "conform to the grade 850–A of the specifications B 37–49 of the A. S. T. M. [American Society for Testing Materials]." A copy of the A. S. T. M. specifications entitled "Standard Specifications for Aluminum for Use in Iron and Steel Manufacture" was received in evidence as defendant's exhibit A. Paragraph 1 of exhibit A reads—

**Scope**

1. These specifications cover aluminum and aluminum alloys in the form of ingots, rods, or shot, designated as shown in Table I, for use in the manufacture of iron and steel.

Other portions of the exhibit describe the process by which the material may be made, its quality, chemical composition, sampling, inspection, chemical requirements, et cetera.

It is clear from the uncontradicted record that the subject merchandise was made from what was admittedly scrap material of a character or quality which would produce ingots containing at least 86 per centum aluminum, the balance being made up of various materials in the nature of impurities.

Plaintiff, in its brief, cites the following authorities in support of its argument that the imported commodity is aluminum scrap fit only to be remanufactured: *Tower & Sons* v. *United States*, 11 Ct. Cust. Appls. 261, 265, T. D. 39080; *Lunham & Moore* v. *United States*, 35 Treas. Dec. 168, T. D. 37803; *A. G. Oakleaf et al.* v. *United States*, 33 Treas. Dec. 495, T. D. 37464; *Schlesinger* v. *Beard* and *Schlesinger* v. *United States*, 120 U. S. 264; and *Walco Bead Co., Inc.* v. *United States*, 29 Cust. Ct. 62, C. D. 1445.

The *Tower*, *Lunham*, *Oakleaf*, and *Schlesinger* cases are cited by plaintiff as authorities for the proposition "that the material melted down to make the aluminum ingots in question consisted of scrap as that word is defined by the above Public Laws." Upon this point,

there would seem to be no dispute. However, we find nothing in those cases to support the proposition that the imported ingots are scrap within the purview of the cited cases.

Plaintiff further contends in its brief that the process of melting the scrap aluminum in the production of ingots was not "a process of advancement because the collector classified the material at bar as aluminum in crude form, although not scrap. Plaintiff controverts only the presumption that the merchandise is not scrap" and then adds "The presumption that it is in crude form still exists," citing *Walco Bead Co., Inc., supra.*

We are not impressed with this argument. When aluminum scrap was converted into ingots which conform to certain A. S. T. M. specifications and were fitted for one purpose only—as an oxidizing agent in the production of steel—it lost its identity as scrap and became aluminum ingots having a different name, character, and use from the scrap material used in their production. Whether or not the ingots are in fact and in law aluminum in crude form, it is unnecessary for us to decide here, since we are satisfied that they are no longer scrap and, therefore, are not within the purview of Public Law 869, *supra.*

It may be pointed out that in the metal schedule of the Tariff Act of 1930, Congress has differentiated between ingots and scrap. Paragraph 301 enumerates, among other things, scrap iron and scrap steel; paragraph 304 reads in part "Steel ingots, cogged ingots, * * * by whatever process made"; and paragraph 316 (b) enumerates "*Ingots,* shot, bars, sheets, wire, or other forms, not specially provided for, or *scrap* * * *." [Emphasis added.]

Since it clearly appears from the record that scrap aluminum through the process of melting lost its identity as scrap and emerged as an article having a new name, character, and use, we are of the considered opinion and so hold that the subject merchandise is not scrap within the purview of section 1 (b) of Public Law 869, *supra.* The protest is overruled in all respects and judgment will issue accordingly.