BEFORE THE SECOND DIVISION, FEBRUARY 24, 1955

**No. 58785.**—Frema, Inc. *v.* United States, protest 186730–K (New York).

LAWRENCE, Judge: An importation described in the official papers as "BRONZE INGOTS" was classified by the collector of customs as composition metal, copper chief value, which is specially provided for in paragraph 1657 of title II—free list—of the Tariff Act of 1930 (19 U. S. C. § 1201, par. 1657). By virtue of section 3425 of the Internal Revenue Code (26 U. S. C. § 3425), as modified by Presidential proclamation carrying out the General Agreement on Tariffs and Trade (84 Treas. Dec. 67, T. D. 52167), a copper tax of 2 cents per pound was imposed upon the merchandise.

Plaintiff claims that the importation consists of metal scrap within the purview of Public Law 869 of the 81st Congress, section 1 (b), and, hence, is not subject to said internal revenue tax.

The text of the pertinent statutes above referred to reads as follows:

TITLE II—FREE LIST

\*      \*      \*      \*      \*      \*      \*

PAR. 1657. Composition metal of which copper is the component material of chief value, not specially provided for.

\*      \*      \*      \*      \*      \*      \*

Section 3425, Internal Revenue Code, as modified, *supra*:

| Item (section) | Rates of import tax |
|---|---|
| 3425 [first] [Copper-bearing ores and concentrates] | 2¢ per lb. on the copper contained therein |

Public Law 869 of the 81st Congress:

SEC. 1. (a) No duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the Internal Revenue Code with respect to metal scrap, or relaying and rerolling rails.

(b) The word "scrap", as used in this Act, shall mean all ferrous and nonferrous materials and articles, of which ferrous or nonferrous metal is the component material of chief value, which are second-hand or waste or refuse, or are obsolete, defective or damaged, and which are fit only to be remanufactured.

The sole question for our determination is whether the subject merchandise is metal scrap, within the purview of Public Law 869, *supra.*

At the trial, the case was submitted for decision upon an agreed statement of facts, the pertinent text of which is here set forth—

On December 26, 1950 Frema, Inc. made a free consumption entry No. 343027 at the Port of New York covering 2173 Bronze Ingots containing a copper content of 85% with the copper content weighing 37534 lbs. The ingots were entered free of duty and tax under Public Law 869.

The Customs Laboratory report dated April 12, 1951, which said report may be received in evidence herein as plaintiff's exhibit 1, states the prepared sample of bronze ingots in the form of drillings contains 85.0% copper.

The Appraiser advisorily classified the bronze ingots as composition metal, chief value copper free of duty under par. 1657 plus two cents a pound tax under Internal Revenue Code.

On June 19, 1951 the Collector of Customs sent to the importer a form letter which is attached to this stipulation and made a part hereof. This form letter was sent by the Collector to the importer pursuant to the general practice then existing at the Port of New York in connection with scrap metals claimed on entry to be free of duty and tax under Public Law 869.

On August 6, 1951 the Importer sent to the Collector at New York a letter to which was attached the affidavit of the shipper together with the notarized translation of the same. This letter, affidavit and translation were in reply to the Collector's form letter dated June 19, 1951 and mentioned above. Said Importer's letter, the shipper's affidavit, and the notarized translation of the same which are contained in the official papers may be received in evidence herein as plaintiff's exhibits 2, 3 and 4 respectively.

That the questions No. 6, 7, 8, 9 and 10 contained in the Collector's form letter dated June 19, 1951 referred to above and the answers to these questions contained in the notarized translation of the Shipper's affidavit referred to above are as follows.

Question 6. Complete description of scrap used–e. g., airplane parts, parts of tanks, etc.

Answer 6. Complete Description: Merchandise remelted from old Bronze scrap (Bronze turnings, old radiators, etc.).

Question 7. Process used in reduction to imported shape.

Answer 7. Process used to obtain the shape in which the merchandise has been exported: The ingots have been obtained by melting.

Question 8. Shape into which reduced.

Answer 8. Shape into which reduced: Ingots.

Question 9. Statement as to whether reduction to such shape was *solely for convenience in transportation.* [Italics quoted.]

Answer 9. The reduction of this scrap into ingots is made so that the ingots represent a commercial shape and a more homogeneous analysis.

Question 10. Statement as to whether or not any primary or virgin metal had been used in above.

Answer 10. No primary metal has been used in the merchandise described above.

If it were a fact that the reduction of this scrap into ingots was solely for convenience in transportation, and if this affidavit had so stated, the Collector would have in accordance with his then established practice liquidated the entry free of tax under Public Law 869. However, since the merchandise was not reduced into ingot form solely for convenience in transportation but was reduced into ingot form so that the ingots represent a commercial shape and a more homogenous analysis, and since the ingots in their imported condition, were sold in the United States as commercial bronze ingots and could have been used in the direct pro-

duction of castings, the Collector did not liquidate the entry free of tax under Public Law 869.

That after the Collector received the letter from the importer dated August 6, 1951 to which was attached the Shipper's affidavit and notarized translation thereof, all of which is referred to above, he liquidated the entry free of duty but subject to the Internal Revenue tax at 2 cents per lb. on 37,534 lbs. under sec. 3425 I. R. C. The liquidated tax amounted to $750.68.

It is further stipulated and agreed that all the papers which the Collector forwarded to the Court with the Protest be considered in evidence as a part of the record in the case.

*      *      *      *      *      *      *

From the foregoing, the following salient facts were established:

(1) That the merchandise, designated as bronze ingots, was classified as composition metal of which copper is the component material in chief value, free of duty, as provided in paragraph 1657, *supra*.

(2) Said merchandise contained a copper content of 85 per centum, weighing 37,534 pounds, upon which a tax or duty of 2 cents per pound was imposed pursuant to section 3425 of the Internal Revenue Code, as modified, *supra*.

(3) The bronze ingots were produced from remelted old bronze scrap, consisting of bronze turnings, old radiators, and so forth, by a melting process.

(4) The reduction of the scrap, above referred to, into ingots was made "so that the ingots represent a commercial shape and a more homogeneous analysis."

(5) It further appears that primary or virgin metal was not used in producing said ingots.

While the parties to the stipulation also agreed that—

If it were a fact that the reduction of this scrap into ingots was solely for convenience in transportation, and if this affidavit had so stated, the Collector would have in accordance with his then established practice liquidated the entry free of tax under Public Law 869.

we do not deem that a matter of consequence here, because it is not in issue. Of prime importance are the agreed facts that the "ingots represent a commercial shape and a more homogeneous analysis" and, in their imported condition, "were sold in the United States as commercial bronze ingots and could have been used in the direct production of castings."

Although the imported articles, bronze ingots, were, according to the agreed facts before us, the product of remelted old bronze scrap, in their condition as imported they were not "materials and articles, * * * which are second-hand or waste or refuse, or are obsolete, defective or damaged, and which are fit only to be remanufactured." Furthermore, the articles were not imported as "scrap" but as "BRONZE INGOTS COPPER CONTENT 85%," articles of commerce distinguishable from scrap. Moreover, according to the facts agreed upon by the parties hereto, the ingots "were sold in the United States as commercial bronze ingots and could have been used in the *direct production of castings*," and, therefore, were not within the terms of Public Law 869, *supra*, which defines scrap as materials and articles of the kind above described "fit only to be *remanufactured*." [Italics ours.]

The facts herein are comparable to those in the case of *C. J. Tower & Sons* v. *United States*, 33 Cust. Ct. 223, C. D. 1657, recently decided by this court, wherein we held that certain aluminum ingots containing from 86 to 88 per centum of aluminum, produced from scrap consisting of aluminum recovered from crashed aircraft, aluminum dross, high zinc type aluminum clips, contaminated aluminum turnings, and irony pots and pans, used solely as a deoxidizing agent in the manufacture of iron or steel, were not classifiable as scrap within the purview of

Public Law 869, *supra.* We there concluded that scrap aluminum which, through the process of melting, had been manufactured into aluminum ingots, had lost its identity as scrap and had become an article having a new name, character, and use.

Consistent with our holding in the *Tower* case, we conclude upon the facts of record here that the various items of bronze scrap, which were melted prior to importation into a homogeneous mass, and sold in the United States as commercial bronze ingots, and thereby adapted for use in the direct production of castings, had lost their identity as scrap and emerged as a new article of commerce having a name, character, and use different from that of the scrap material from which they were produced.

We, therefore, overrule the protest and affirm the decision of the collector.

Judgment will issue accordingly.